[No. S041866. Dec. 6, 1995.]

JOHN QUINTANO, Plaintiff and Appellant, v.
MERCURY CASUALTY COMPANY, Defendant and Respondent.

1050

**COUNSEL**

Moriarity & Associates and John L. Moriarity for Plaintiff and Appellant.

Stockdale & Peckham, Paul F. Sowa and John Doherty for Defendant and Respondent.

Lynberg & Watkins, Dana John McCune and Charles C. McKenna as Amici Curiae on behalf of Defendant and Respondent.

OPINION

LUCAS, C. J.—This case presents the question whether former Insurance Code section 11580.2, subdivision (i) (hereafter section 11580.2(i)),[1] establishing certain conditions precedent to a claim for coverage under an uninsured motorist policy, applied to claims on an underinsured motorist policy. The Court of Appeal found the subdivision inapplicable, and we agree.

FACTS

On May 21, 1989, John Quintano was injured in an automobile accident caused by another driver's negligence. The negligent driver had liability insurance with coverage limits of $15,000. Mercury Casualty Company (hereafter Mercury) insured Quintano with underinsured motorist coverage up to the amount of $30,000 for each person and $60,000 for each accident. The policy also provided uninsured motorist coverage.

Quintano's attorney informed Mercury of a proposed settlement of Quintano's claim against the tortfeasor on February 26, 1990, without, however, specifying whether he had filed suit in that matter. On March 15, 1990, Mercury gave Quintano "permission" to settle the bodily injury claim with the tortfeasor's insurer. Mercury informed Quintano that the statute of limitations on the claim would expire on May 21, 1990, and asked, in order to process the claim on the underinsured motorist coverage, for a copy of the medical specials, a copy of the declaration page of the tortfeasor's liability insurance policy, and a copy of the draft showing payment thereunder. On June 26, 1990, Quintano, through counsel, sent Mercury the requested documents. Quintano requested that Mercury pay, under his underinsured motorist coverage, the difference between his underinsured motorist protection and the limits of the tortfeasor's liability policy, that is, $15,000. Mercury rejected the demand as tardy.

On October 11, 1990, Quintano filed a lawsuit against Mercury. Quintano's second amended complaint asserted causes of action for breach of contract, bad faith and intentional infliction of emotional distress. Mercury moved for summary judgment, arguing Quintano's action was barred by the

---

[1]All statutory references are to the Insurance Code unless otherwise indicated. References to section 11580.2(i) are to the text of that statute applicable at all relevant times during this litigation, that is, as amended by the Statutes of 1988, chapter 1471, section 1, page 5191. Throughout this opinion, the section is referred to as former section 11580.2(i) or former subdivision (i). The statute was amended effective January 1, 1996. (See Stats. 1995, ch. 738, § 1.)

statute of limitations provision in the insurance policy, referring to policy language based on the language of former section 11580.2(i).

Mercury also argued there were no triable issues of fact regarding waiver or estoppel in applying the statute of limitations defense. The trial court granted Mercury's motion for summary judgment. The Court of Appeal reversed, holding former section 11580.2(i) inapplicable to underinsured motorist coverage.

## DISCUSSION

■ Uninsured and underinsured motorist policies are governed generally by section 11580.2, which requires automobile liability insurers to offer insurance for damages or wrongful death caused by both uninsured and underinsured motorists. (section 11580.2, subds. (a)(1) & (p)(7).) The provisions of the statute are deemed part of every uninsured and underinsured motorist policy. (*Hartford Fire Ins. Co.* v. *Macri* (1992) 4 Cal.4th 318, 324 [14 Cal.Rptr.2d 813, 842 P.2d 112] [hereafter *Macri*].) As used in section 11580.2, the term "uninsured motor vehicle" generally includes "underinsured motor vehicle." (§ 11580.2, subd. (b).)

Underinsured motorist coverage was created to provide additional coverage for the insured who is injured by a tortfeasor who has minimal liability insurance. (See *Macri, supra*, 4 Cal.4th at p. 324.) Section 11580.2, subdivision (p) (hereafter section 11580.2(p)), governs underinsured motorist coverage, requiring insurers to include underinsured motorist coverage in policies along with uninsured motorist coverage, subject to an agreement to delete the coverage. Section 11580.2(p) also defines terms for underinsured motorist coverage, limits coverage, establishes the maximum liability of the insurer, sets out the insurer's entitlement to credit or reimbursement and requires the insured to share information with the insurer. Significantly, section 11580.2(p) also provides that to the extent its terms conflict with provisions of section 11580.2, subdivisions (a) through (o), the terms of subdivision (p) prevail.

Of particular import in this case is section 11580.2(p)(3), which limits when coverage arises for underinsured motorist claims. It provides: "This coverage does not apply to any bodily injury until the limits of bodily injury liability policies applicable to all insured motor vehicles causing the injury have been exhausted by payment of judgments or settlements, and proof of the payment is submitted to the insurer providing the underinsured motorist coverage."

Mercury claims that the provisions of former section 11580.2(i) also govern underinsured motorist coverage. At all times relevant to this litigation, former section 11580.2(i) provided: "No cause of action shall accrue to the insured under any policy or endorsement provision issued pursuant to this section unless one of the following actions have been taken within one year from the date of the accident: [¶] (1) Suit for bodily injury has been filed against the uninsured motorist, in a court of competent jurisdiction. [¶] (2) Agreement as to the amount due under the policy has been concluded. [¶] (3) The insured has formally instituted arbitration proceedings."[2] Quintano's policy recites essentially the same conditions.[3]

 Mercury claims Quintano's failure to comply with the terms of former section 11580.2(i) defeats his claim for coverage. Quintano claims, on the other hand, that the subdivision is inapplicable to underinsured motorist coverage because it conflicts with section 11580.2(p)(3).

The Court of Appeal rejected Mercury's claim, relying in part on section 11580.2(p)(3), which, as we have seen, requires that the tortfeasor's insurance policy limit must be exhausted and a judgment or settlement paid before the underinsured motorist coverage applies. The appellate court pointed out that subdivision (p)(3) and former subdivision (i) of section 11580.2 are in basic conflict, because to apply former subdivision (i) to underinsured motorist coverage would frequently defeat coverage before the

---

[2] Effective January 1, 1996, the amended subdivision provides: "(i) [¶] (1) No cause of action shall accrue to the insured under any policy or endorsement provision issued pursuant to this section unless one of the following actions have been taken within one year from the date of the accident: [¶] (A) Suit for bodily injury has been filed against the uninsured motorist, in a court of competent jurisdiction. [¶] (B) Agreement as to the amount due under the policy has been concluded. [¶] (C) The insured has formally instituted arbitration proceedings by notifying the insurer in writing sent by certified mail, return receipt requested. Notice shall be sent to the insurer or to the agent for process designated by the insurer filed with the department. [¶] (2) Any arbitration instituted pursuant to this section shall be concluded either: [¶] (A) Within five years from the institution of the arbitration proceeding. [¶] (B) If the insured has a workers' compensation claim arising from the same accident, within three years of the date the claim is concluded, or within the five-year period set forth in subparagraph (A), whichever occurs later. [¶] (3) The doctrines of estoppel, waiver, impossibility, impracticality, and futility apply to excuse a party's noncompliance with the statutory timeframe, as determined by the court. [¶] (4) Parties to the insurance contract may stipulate in writing to extending the time to conclude arbitration." (Stats. 1995, ch. 738.)

[3] The policy provides: "Action against company: No action shall lie against the company unless, as a condition precedent thereto, the insured or his legal representative has fully complied with all the terms of this coverage nor unless within one year from the date of the accident: (a) suit for bodily injury has been filed against the uninsured motorist, in a court of competent jurisdiction and notice of such suit has been given to company, or (b) agreement as to the amount due under this coverage has been concluded, or (c) the insured or his representative has formally instituted arbitration proceedings."

condition precedent to coverage established by subdivision (p)(3), that is, exhaustion of the tortfeasor's policy limits, had occurred.[4]

We agree with the Court of Appeal that there is a rather obvious conflict between former subdivision (i) and subdivision (p)(3) of section 11580.2. As we shall demonstrate, basic differences in the settlement process for uninsured motorist coverage and underinsured motorist coverage make it clear that the Legislature cannot have intended former subdivision (i) to apply in the latter context.

The issue before us today is one of statutory construction. ▮ When we are presented with such issues, "our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. . . . The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) In sum, " '[r]ules of statutory construction require courts to construe a statute to promote its purpose, render it reasonable, and avoid absurd consequences.' " (*Ford* v. *Gouin* (1992) 3 Cal.4th 339, 348 [11 Cal.Rptr.2d 30, 834 P.2d 724].)

▮ We have not previously encountered the precise question of statutory interpretation presented here. However, we have construed section 11580.2 in general, and section 11580.2(p)(3) in particular, in *Macri, supra,* 4 Cal.4th 318. In *Macri,* we pointed out that section 11580.2 created separate requirements for settlement of claims under uninsured and underinsured motorist policies. (*Macri, supra,* 4 Cal.4th at pp. 327-328.) One critical difference we identified was that the insured making a claim for uninsured motorist coverage is not required to pursue legal action against the tortfeasor to secure coverage from his or her own insurer (*id.* at p. 328), while section 11580.2(p)(3) requires the insured making a claim for underinsured motorist coverage to take action against the tortfeasor, obtain a settlement or judgment and submit proof of payment to the insurer in order to be eligible to make a claim. (*Macri, supra,* 4 Cal.4th at p. 327.)

---

[4]The Court of Appeal also pointed out that section 11580.2(p)(6) provides specifically for the type of notice that must be given to the underinsured motorist insurer of actions against the underinsured tortfeasor, and that the paragraph requires only that notice be provided in a "reasonable time." Section 11580.2(p)(6) provides that if the insured brings an action against the underinsured motorist, the insured "shall forthwith give to the insurer . . . a copy of the complaint . . . . All pleadings and depositions shall be made available for copying or copies furnished the insurer, at the insurer's expense, within a reasonable time."

The insurer's rights under the two types of policies also differ. The insurer providing uninsured motorist coverage may be subrogated to the insured's recovery against the uninsured motorist. The right of subrogation is not accorded to the insurer on an underinsured motorist claim. (*Macri, supra,* 4 Cal.4th at pp. 328, 329.) The insurer offering an underinsured motorist policy is only liable to the insured for the *difference* between the insured's underinsured motorist policy limits and the amount paid to the insured by the tortfeasor or his or her insurer. (*Id.* at p. 328; § 11580.2 (p)(4).) The insurer offering underinsured motorist coverage is entitled to reimbursement or credit for the amount the insured receives from the tortfeasor or his or her insurer. (*Macri, supra,* 4 Cal.4th at p. 328; § 11580.2(p)(5).) The insurer's right to reimbursement or credit "is specifically limited to the underinsured tortfeasor's policy limits and precludes the insurer from asserting additional subrogation rights." (*Macri, supra,* 4 Cal.4th at p. 328, italics omitted.)

Having established these points, we decided the specific question before us, that is, whether the requirement of section 11580.2, subdivision (c)(3), that the insurer consent to any settlement with the tortfeasor before uninsured motorist benefits will be available, should apply to claims for underinsured motorist coverage. We held that the consent requirement of subdivision (c)(3) did not apply to such claims, because it is in essential conflict with subdivision (p)(5) and the insurer's right to reimbursement or credit—a right that pursuant to subdivision (p)(3) "does not mature until *after* the insured has received policy limits from the underinsured's carrier by 'judgment[] or settlement[] . . . .'" (*Macri, supra,* 4 Cal.4th at p. 328, italics in original, quoting § 11580.2(p)(3).)

In a discussion that is of great significance to the question before us in this case, in *Macri* we pointed out that in the context of underinsured motorist coverage, unlike uninsured motorist coverage, reaching a settlement or judgment exhausting the tortfeasor's policy limits is a *precondition to coverage* under subdivision (p)(3). We said that "section 11580.2(p)(3) provides that *underinsured coverage does not apply* until the limits of bodily injury have been exhausted and proof of payment is submitted to the insurer providing the underinsured motorist coverage. The effect of section 11580.2(p)(3) is to require . . . the insured to prosecute actions against the underinsured, to obtain a settlement and/or judgment and to submit proof of payment to the insurer. If the insured fails to follow the mandate of section 11580.2(p)(3), *there is no underinsured motorist coverage available.*" (*Macri, supra,* 4 Cal.4th at p. 327, italics added; see also Preston, Cal. Uninsured Motorist Practice (Cont.Ed.Bar Supp. 1994) § 1.25, p. 23.) We concluded that to permit the insurer the power to thwart coverage by refusing to consent to a settlement that is a precondition to coverage would "defeat the

manifest intent of the statute to provide mandatory coverage where an insured suffers bodily injuries from an underinsured motorist." (*Macri, supra*, 4 Cal.4th at p. 327.)

As noted above, section 11580.2(p)(3) declares that: "*This coverage does not apply* . . . until the limits of bodily injury liability policies applicable to all insured motor vehicles causing the injury *have been exhausted by payment of judgments or settlements*, and *proof of the payment is submitted* to the insurer providing the underinsured motorist coverage." (Italics added.) As we have shown, *Macri* held that section 11580.2(p)(3) establishes a condition precedent to the accrual of the insured's right to coverage. (*Macri, supra*, 4 Cal.4th at p. 327.) When we examine the statutory language before us today with this understanding, it is clear that section 11580.2(p)(3) and former section 11580.2(i) are inconsistent, and that the Legislature cannot have intended the latter provision to apply to underinsured motorist insurance claims.

Former section 11580.2(i) states that the insured has no cause of action under the policy unless within a year he or she: (1) files suit against the tortfeasor; (2) agrees with his or her own carrier as to the amount due under the policy; or (3) formally institutes arbitration proceedings—again, with his or her own carrier. To apply former subdivision (i) to underinsured motorist claims would mean that the insured must submit proof that he or she had instituted a suit against the tortfeasor, or reached settlement with or demanded arbitration from his or her own carrier within a year of the accident, although under section 11580.2(p)(3), the right to coverage under the underinsured motorist policy does not even arise until *after* the tortfeasor's insurer has paid the insured pursuant to a judgment or settlement with the tortfeasor.

We see a basic conflict between subdivisions (i) and (p)(3). To apply both subdivisions to underinsured motorist claims would be anomalous because it would require the insured who seeks to settle with the tortfeasor to make a claim on the underinsured motorist policy within the same time period as he or she is allotted to fulfill a condition precedent to the accrual of coverage under the policy. To apply both subdivisions to underinsured motorist coverage would mean either that a claim could accrue before a right to coverage has been established—an absurd result that could not have been intended under the statutory scheme—or that the insured would have only the narrowest margin of time in which to commence a claim for underinsured motorist coverage. For example, settlement with the tortfeasor's insurer may take close to a year even when the insured assiduously pursues settlement, yet if former subdivision (i) applied, the insured would have very little time between the accrual of coverage through settlement with the

tortfeasor and the deadline for reaching an agreement on the amount due under the underinsured motorist policy or instituting arbitration with his or her own carrier.

In some cases it would actually prove *impossible* for the insured to fulfill the conditions established by section 11580.2(p)(3) in time to meet the conditions set out in former subdivision (i), through no fault of the insured. For example, even if the insured makes a timely claim against the tortfeasor's insurer, that insurer may agree to a settlement but delay *payment* for a period beyond a year past the date of the accident. Unless the insured chooses to institute a lawsuit against the tortfeasor instead of attempting to settle, the insured may be thwarted in meeting the requirements of both subdivision (p)(3) and former subdivision (i) because of such a delay in the tortfeasor's insurer's *payment* on the settlement agreement—a condition precedent to coverage under (p)(3). Thus, to require the insured to institute a claim for underinsured motorist coverage as required by former subdivision (i) may defeat coverage altogether for reasons outside the control of the insured, a result we disapproved generally in *Macri, supra,* 4 Cal.4th at page 327.

As one authority has observed: "Because § 11580.2(p)(3) states that the coverage does not apply until the limits of bodily injury liability policies applicable to all insured motor vehicles causing the injury have been exhausted by payment, it is difficult to comprehend how a party can be deemed entitled to begin and prosecute an action before the coverage even applies. [¶] Thus, it is difficult to see how an underinsured claim can be found to 'accrue' before the coverage applies and an action can be commenced. The appropriate date for 'accrual' of the claim would seem to be the date the third party claim is released." (Jacobson, *Latest Word on Statute of Limitations in Underinsured Motorist Cases* (Cont.Ed.Bar May 1994) 16 Civil Litigation Rep. 177.)

Mercury claims, nonetheless, that it is possible for the insured to comply with both provisions, and maintains that therefore, there is no conflict between former subdivision (i) and subdivision (p)(3) of section 11580.2. Mercury notes that if the insured sues the tortfeasor, he or she automatically satisfies the requirements of former section 11580.2(i), and will thereafter satisfy section 11580.2(p)(3) whenever judgment or settlement is obtained on the suit. We cannot, however, interpret former section 11580.2(i) as *requiring* the insured to sue the underinsured tortfeasor. Apart from the unlikelihood that the Legislature intended to foster needless litigation in this way, such an interpretation would render superfluous paragraphs (2) and (3) of former section 11580.2(i), which provide the insured with the alternatives

of settling or arbitrating a claim against the insurer when no suit has been filed. Our canons of statutory construction do not countenance such a result. (See *Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 459 [279 Cal.Rptr. 834, 807 P.2d 1063]; *City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935].)

Mercury suggests that even without a lawsuit, the other methods of satisfying former section 11580.2(i), that is, reaching agreement with or demanding arbitration of the insured's own insurer within a year of the accident, may be satisfied simultaneously with the requirements of section 11580.2(p)(3). Nothing prevents the insured, Mercury claims, from demanding arbitration or reaching an agreement as to the amount due under the policy with the insurer within a year of the accident but before settlement with or judgment against the tortfeasor.

We disagree. A demand for arbitration under the policy before settlement with or judgment against the tortfeasor would be a meaningless exercise. As we have shown, the insured's right to claim coverage would not have accrued, so that any demand for arbitration would be premature. Further, as a practical matter, the insurer's liability cannot be determined by arbitration until settlement or judgment against the tortfeasor, as the insurer is only liable for the difference between the amount paid by the tortfeasor or his or her insurer and the insured's policy limits. (§ 11580.2(p)(4),(5).)

Mercury's reliance on *Rangel* v. *Interinsurance Exchange* (1992) 4 Cal.4th 1 [842 P.2d 82, 14 Cal.Rptr.2d 783] (hereafter *Rangel*) in this regard is unavailing. Mercury claims that in *Rangel* we interpreted former section 11580.2(i) as approving the filing of a demand for arbitration under an uninsured motorist policy even though the insurer's liability under the policy could not be ascertained until a pending workers' compensation claim was settled. *Rangel* is inapposite, however, as it interpreted a statutory scheme that provided for a stay of arbitration pending determination of the workers' compensation claim. (§ 11580.2, subd. (f); *Rangel, supra,* 4 Cal.4th at pp., 10, 17, fn. 15.) In that context, unlike here, the insured had coverage under section 11580.2, but her claim was simply subject to a stay. The insured with an underinsured motorist policy, by contrast, may not pursue underinsured motorist coverage until settlement or judgment exhausting the tortfeasor's policy limits, pursuant to section 11580.2(p)(3). Accordingly, we cannot interpret the statutory scheme applicable to underinsured motorist coverage as permitting the insured to demand arbitration before settlement with or judgment against the tortfeasor.

Similarly, an agreement with the insurer as to the amount due under the underinsured motorist provisions of the policy in advance of settlement with

or judgment against the tortfeasor would be impossible or impracticable, again because the insured would have no coverage under the policy at such a point, and the insurer's underinsured motorist liability could not be ascertained until judgment or settlement exhausting the tortfeasor's liability limits had occurred. Indeed, the facts of the case before us confirm the impracticability of requiring the insured to conclude an agreement before the tortfeasor's insurer has paid the settlement or judgment. Mercury refused to consider Quintano's claim until it received proof of payment of the tortfeasor's settlement.

In essence, Mercury's claim that the insured may meet the conditions of former section 11580.2(i) and section 11580.2(p)(3) at the same time would require the insured to demand arbitration or reach settlement with the insurer before coverage accrued or could be determined under the policy, or risk waiting to make the underinsured motorist claim on the insurer in the time—if any—between settlement with the tortfeasor and the end of the year after the accident. Alternatively, Mercury's interpretation of the statute would require the insured to file suit against the tortfeasor, rendering superfluous paragraphs (2) (agreement as to amount due) and (3) (arbitration) of section 11580.2. Finally, Mercury fails to acknowledge that in some cases, it may be impossible for the insured to secure payment of a settlement within a year of the accident. We cannot believe the Legislature intended to leave some insureds without a means of claiming coverage under the underinsured motorist policy. Nor can we believe the Legislature wished to foster unnecessary litigation or to require the insured to reach agreement or demand arbitration from the insurer before his or her right to claim coverage under the policy had even accrued. Our canons of statutory construction guide us to reject an interpretation that would produce such an absurd result. (See *Ford* v. *Gouin*, *supra*, 3 Cal.4th at p. 348 [rules of construction require courts to avoid absurd results].)

We have demonstrated that the language of subdivisions (i) and (p) are in basic conflict. In addition, the evident purpose of former section 11580.2(i) supports our conclusion it was not intended to apply to underinsured motorist claims. The primary purpose of former subdivision (i) is to require the insured to take action that will protect the insurer's right of subrogation. (*Kortmeyer* v. *California Ins. Guarantee Assn.* (1992) 9 Cal.App.4th 1285, 1290 [12 Cal.Rptr.2d 71]; see also *Aetna Cas. & Surety Co.* v. *Superior Court* (1965) 233 Cal.App.2d 333, 340 [43 Cal.Rptr. 476] [interpreting former § 11580.2, subd. (g), now § 11580.2(i)], disapproved on other grounds in *Van Tassel* v. *Superior Court* (1974) 12 Cal.3d 624, 627-628 [116 Cal.Rptr. 505, 526 P.2d 969].) That purpose is simply inapplicable when it comes to underinsured motorist insurance, because the insurer offering underinsured

motorist coverage is not entitled to subrogation. (*Macri, supra,* 4 Cal.4th at p. 329.) Because the insurer has no need to protect its subrogation rights or to fear double recovery on the part of its insured, it is implausible to suppose that the Legislature intended former subdivision (i) of section 11580.2 to apply in the underinsured motorist insurance context.

Mercury offers a conflicting view of the legislative intent informing section 11580.2(i). It argues that former section 11580.2(i) also serves the purpose of creating a parallel one-year time limit for claims against the tortfeasor and claims against the insurer, and that this policy is as applicable to underinsured motorist coverage as it is to uninsured motorist coverage. Mercury points out that for both uninsured and underinsured motorist coverage, the insurance policy is intended to provide the insured with the same protection he or she would have had if the tortfeasor had liability insurance with limits equal to the insured's (see, e.g., *Viking Ins. Co.* v. *State Farm Mut. Auto Ins. Co.* (1993) 17 Cal.App.4th 540, 549 [21 Cal.Rptr.2d 590]), and that the liability of the insurer should not exceed the liability of the tortfeasor. (See, e.g., *Firemen's Ins. Co.* v. *Diskin* (1967) 255 Cal.App.2d 502 [63 Cal.Rptr. 177].) Mercury reasons that "[t]he one-year requirement of subdivision (i) is consistent with this general purpose, since the statute of limitations applicable to the insured's tort action against the [tortfeasor] is one year. . . ."

The argument is not persuasive in the context of underinsured motorist coverage. Parallel time limits for claims against the tortfeasor and claims under the insurance policy are not necessary to assure that the insurer under an underinsured motorist policy faces no greater liability than the tortfeasor. By statute, the underinsured motorist insurer owes nothing until satisfaction of judgment or settlement against the tortfeasor, and is entitled to a credit for any amount the insured received from the tortfeasor. (§ 11580.2 (p)(3), (5).) The insurer can never be liable for more than the tortfeasor's liability. (*Ibid.*)

Furthermore, Mercury's claim that its interpretation of former section 11580.2(i) is consistent with a legislative intent to produce parallel time limits for actions against the tortfeasor and for claims upon the insurer is illusory. The claimed parallelism would not exist even if we interpreted former subdivision (i) to apply to underinsured motorist coverage, because the two claims accrue at different points. As we have observed, the insured's right to claim underinsured motorist coverage only accrues after satisfaction of judgment or settlement with the tortfeasor. Most, if not all of the year Mercury would allot to the insured to bring the claim against the insurer is legally unavailable for that purpose, because the insured has no coverage and no right to make a claim on the policy. Rather, from the time coverage

actually accrued, the insured would only have whatever time is left, if any, between payment of judgment or settlement with the tortfeasor and the expiration of the year from the date of the accident within which to take action against the insurer.

Next, Mercury argues that legislative history supports its claim that the Legislature intended subdivisions (i) and (p)(3) of section 11580.2 to operate concurrently in the context of underinsured motorist coverage. Again, we are not persuaded.

Mercury asks that we take judicial notice that the author of the bill that added underinsured motorist coverage to section 11580.2 stated that "[t]he procedure for filing a[n underinsured motorist] claim against your carrier will be the same as now exists for 'uninsured' motorist insurance, including arbitration of any dispute." From this statement, Mercury seems to reason that the Legislature intended every element of section 11580.2 that applies to filing claims for uninsured motorist coverage to apply also to underinsured motorist coverage. Obviously, the statutory language stating that subdivision (p) prevails over other provisions of section 11580.2 in case of conflict, and our opinion in *Macri, supra,* 4 Cal.4th 318, holding that the consent requirement that is applicable to claims for uninsured coverage under section 11580.2, subdivision (c)(3) does not apply to claims for underinsured motorist coverage, demonstrate that this argument is untenable. ■■ We have frequently stated, moreover, that the statements of an individual legislator, including the author of a bill, are generally not considered in construing a statute, as the court's task is to ascertain the intent of the Legislature as a whole in adopting a piece of legislation. (*Williams* v. *Garcetti* (1993) 5 Cal.4th 561, 569 [20 Cal.Rptr.2d 341, 853 P.2d 507]; *Grupe Development Co.* v. *Superior Court* (1993) 4 Cal.4th 911, 922 [16 Cal.Rptr.2d 226, 844 P.2d 545]; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699-700 [170 Cal.Rptr. 817, 621 P.2d 856]; *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589 [128 Cal.Rptr. 427, 546 P.2d 1371].)[5]

---

[5]We grant Mercury's request that we take judicial notice of the various versions of the bill adding underinsured motorist coverage to section 11580.2 that the Legislature considered as the bill made its progress through the Legislature. (See Evid. Code, §§ 451-452, 459; *Cynthia D.* v. *Superior Court* (1993) 5 Cal.4th 242, 250, fn. 7 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) Mercury also requests that we take judicial notice of several letters, including that quoted from above, to various legislators and the governor expressing opinions in support of and in opposition to the bill. The request is denied. The letters, upon examination, do not aid in interpretation of the statute, but merely state the individual opinions of their authors. (See *Williams* v. *Garcetti, supra,* 5 Cal.4th at p. 569; see also *Roberts* v. *City of Palmdale* (1993) 5 Cal.4th 363, 377-378 [20 Cal.Rptr.2d 330, 853 P.2d 496]; *Behrens* v. *Fayette Manufacturing Co.* (1992) 4 Cal.App.4th 1567, 1574, fn. 4 [7 Cal.Rptr.2d 264].)

Mercury also refers to legislative history relevant to section 11580.2(p)(6), claiming that the subdivision deals with "tracking" of underinsured and third party actions only to the extent that it requires notice to the insurer of third party actions. We fail to understand how this claim advances Mercury's position. Mercury also refers to a possible conflict between section 11580.2(p)(6) and section 11580.23, which provides that if a suit has been filed against an *uninsured* motorist, the insured must notify the insurer in a reasonable time, "but in no event shall that notice be required *before* one year from the date of the accrual of the cause of action on which the claim is based." (Italics added.) Again, Mercury's point is obscure; it would seem that if the insured under an uninsured motorist policy who sues the tortfeasor may not be required to notify the insurer of the suit before a year has elapsed, Mercury's claim that it cannot protect its interests unless it has notice of underinsured motorist claims within a year through the application of former section 11580.2(i) must fail. In any event, our decision does not depend on an interpretation of section 11580.2(p)(6), but on an interpretation of subdivision (p)(3) of that section. As we said in *Macri*, the legislative history shows that section 11580.2(p)(3) was understood as covering coordination of the two sources of insurance benefits available to the insured holding an underinsured motorist policy, and that this was one area where it was understood that provisions applicable generally to uninsured motorist coverage might not apply. (*Macri, supra,* 4 Cal.4th at p. 327.)

In sum, we see no evidence in the legislative history that supports Mercury's interpretation of section 11580.2. On the contrary, the evident intent of the Legislature to provide mandatory coverage for injuries caused by underinsured motorists (see *Macri, supra,* 4 Cal.4th at p. 327), in conjunction with its express statement that provisions of subdivision (p) dealing with underinsured motorist coverage supersede any conflicting general provisions of earlier subdivisions, as well as the obvious tension between subdivision (p)(3) and former subdivision (i) of section 11580.2, persuade us that our interpretation is the more reasonable one.

Mercury next argues that, as a matter of public policy, the time limits prescribed by former section 11580.2(i) should be interpreted to apply to underinsured motorist claims in order to protect the insurer against prejudicial delay in the filing and prosecution of claims. It asserts it will be unable to protect its interests by promptly interviewing witnesses and conducting investigations if the insured is allowed to delay demanding compensation under the policy's underinsured motorist provisions beyond the year prescribed in former subdivision (i). Mercury urges that unless former section 11580.2(i) is interpreted to apply to underinsured motorist coverage, there will be *no* time limit by which the insured must bring a claim against the insurer.

In response, we observe that former section 11580.2(i) does not in all, or even in most cases, establish a time limit by which the insured must file a claim with the insurer; the subdivision establishes *no* time limit for the making of a claim for uninsured motorist benefits in those cases in which the insured chooses to sue the tortfeasor. For this reason, even if we interpreted former subdivision (i) to apply to underinsured motorist claims, the subdivision would not function primarily to establish a time limit by which underinsured motorist claims must be brought.

Moreover, as a practical matter, we think it unlikely the insured who chooses to settle with the tortfeasor will delay making a claim on the insurer any longer than the insured who chooses to sue the tortfeasor. To make a claim, after all, is the only way to receive full compensation under the underinsured motorist policy. Nor does it seem likely the insured will delay concluding a judgment or settlement with the tortfeasor's insurer, for the same reason. We note, too, that the Legislature has provided some protection for insurers by requiring the insured who brings an action against the tortfeasor to notify the insurer of the action "within a reasonable time," allowing the insurer to take action to protect its interests. (§ 11580.2(p)(6).) The further protection of the insurer's interest provided by former section 11580.2(i) is not warranted, because, as we have seen, the insured's right to make a claim under the policy does not accrue until the limits of liability under the negligent driver's policy have been exhausted, and the insurer has no right of subrogation that warrants the protection of former subdivision (i).

We also observe that in the present case, no unreasonable delay occurred. We are not called on, accordingly, to determine whether an equitable remedy might be available to the insurer in a case in which the insured was guilty of an unreasonable delay in presenting the claim.

Finally, we consider the contrary case law on which Mercury relies. We are not persuaded by the decision of the Court of Appeal in *Arrasmith* v. *State Farm Ins. Co.* (1994) 24 Cal.App.4th 12 [29 Cal.Rptr.2d 53] (hereafter *Arrasmith*), holding section 11580.2(i) applicable to underinsured motorist coverage. In *Arrasmith*, the Court of Appeal reasoned that subdivisions (i) and (p)(3) of section 11580.2 are not inconsistent because it may be appropriate to require the "perfection" of a claim under subdivision (i) before coverage arises under subdivision (p). The court stated, "[t]he insured is also not prohibited from requesting arbitration or entering into settlement negotiations with the insurer before resolution of claims against others. Any settlement or arbitration recovery against the insurer necessarily would be subject to the insurer's right of reimbursement or credit for amounts received from the tortfeasor or other insurers." (*Arrasmith*, *supra*, 24 Cal.App.4th at p. 18.)

This statement, however, is inconsistent with the language of former section 11580.2(i)(2), which requires the insured not only to enter into settlement negotiations but to "conclude" an "agreement" within the specified time limit. The statement is also inconsistent with the nature of underinsured motorist coverage, as the insurer is liable to the insured only for the difference between the insured's policy limits and the payments received by the insured from the tortfeasor or his or her insurer. As we have observed, to require the insured to settle with or make a demand for arbitration from his or her own insurer before the right to coverage accrues or the amount in controversy is made definite by a settlement with or judgment against the tortfeasor or his insurer would be absurd. (See Jacobson, *Latest Word on Statute of Limitations in Underinsured Motorist Cases, supra*, 16 Civil Litigation Rep. 176-177 [criticizing *Arrasmith* on similar basis].) Nor are we persuaded by the *Arrasmith* court's citation to *Firemen's Ins. Co.* v. *Diskin, supra*, 255 Cal.App.2d 502, a case involving uninsured motorist coverage and holding that the requirements of former section 11580.2(i) are absolute. As we have demonstrated, the insurer's need to protect its right of subrogation in the case of uninsured motorist coverage makes strict adherence to former subdivision (i) necessary, while the absence of subrogation in the context of underinsured motorist coverage makes such limitations irrelevant when the latter type of coverage is at stake.

Mercury also directs our attention to two out-of-state cases holding that requirements similar to those found in former subdivision (i) are applicable to claims for underinsured motorist coverage. These cases were cited with approval by the *Arrasmith* court. (See *Arrasmith, supra*, 24 Cal.App.4th at p. 19.) In *McGlinchey* v. *Aetna Cas. and Sur. Co.* (1992) 224 Conn. 133 [617 A.2d 445, 446] (hereafter *McGlinchey*), the Connecticut Supreme Court interpreted a clause in the insured's policy that "the covered person may make a written demand for arbitration within 2 years of the date of [the] accident" as establishing a condition precedent to the existence of coverage. However, the quoted language was part of the policy, rather than a statutory provision such as is at issue here. Further, although Connecticut law, like California law, imposed on the claimant the duty to exhaust the tortfeasor's coverage before recovering under the underinsured motorist policy, it appears that at the time, nothing in Connecticut law established that provisions relating to underinsured motorist coverage superseded any apparently conflicting provision applicable to uninsured motorist coverage. The same distinctions apply to the other out-of-state case cited, *Shelton* v. *Country Mut. Ins. Co.* (1987) 161 Ill.App.3d 652 [113 Ill.Dec. 426, 515 N.E.2d 235].

We note, too, that a forceful dissent in the *McGlinchey* case argues the point we have made here, that is, to impose a time limit that may require the

insured to settle a claim for underinsured motorist coverage with his or her insurer before settlement with the tortfeasor, when the latter settlement is a condition precedent to coverage, places the insured in an impossible position and is at odds with the public policy underlying statutes providing for underinsured motorist coverage. (*McGlinchey, supra,* 617 A.2d 445, 449-450 (dis. opn. of Berdon, J.).) Further, possibly in response to this dissent, in 1993 the Connecticut Legislature outlawed such a term of limitation in underinsured motorist policies, substituting a three-year minimum period for bringing such claims. (See *Aetna Life and Cas. Co.* v. *Braccidiferro* (1994) 34 Conn.App. 833 [643 A.2d 1305, 1308].) Accordingly, the *McGlinchey* case is of little relevance to our analysis.

We observe that there is also out-of-state authority in support of our position. In *Worley* v. *Ohio Mut. Ins./United Ohio Ins.* (1991) 76 Ohio.App.3d 531 [602 N.E.2d 416], the Ohio court rejected a one-year limitation for making a claim on an underinsured motorist policy, declaring that "since the insurer is not legally obligated to make payment to the insured because of underinsurance coverage until after the limits of liability of all . . . policies . . . have been exhausted by payment or settlement, it would be absurd to require the insured to bring suit or to arbitrate a claim against his insurer before the tortfeasor's insurance coverage has been exhausted by payment or settlement as the insurer is not legally obligated before that condition is met." (*Id.* at p. 418-419, italics omitted; see also *Lapata* v. *Progressive Cas. Ins. Co.* (1992) 79 Ohio.App.3d 65 [606 N.E.2d 1015] [policy requiring underinsured motorist claimant to make arbitration demand within a year of accident is unreasonable]; cf. *Miller* v. *Progressive Cas. Ins.* (1994) 69 Ohio.St.3d 619 [635 N.E.2d 317] [policy requirement that insured bring action or demand arbitration within one year is void as against public policy as to both uninsured motorist and underinsured motorist claims].)

Accordingly, as we have demonstrated, we are not persuaded by *Arrasmith, supra,* 24 Cal.App.4th 12, or by the out-of-state authorities cited therein. We disapprove *Arrasmith* to the extent it is inconsistent with the views expressed herein.

CONCLUSION

Based on the foregoing, because an insured's claim for underinsured motorist coverage prior to payment upon a settlement or judgment with the tortfeasor would be premature, we conclude that the requirements of former

section 11580.2(i) were not intended to apply to underinsured motorist claims.[6] Accordingly, the judgment of the Court of Appeal is affirmed.

Mosk, J., Kennard, J., Arabian, J., Baxter, J., George, J., and Werdegar, J., concurred.

Respondent's petition for a rehearing was denied January 24, 1996.

---

[6]Because we reach this conclusion, we need not reach Quintano's claims regarding substantial compliance and estoppel. It is also unnecessary for us to examine Mercury's complaints about particular wording in the Court of Appeal opinion, as our grant of review had the effect of depublishing that opinion.