Filed 6/6/23  P. v. Le CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>HOANG NAM MINH LE,<br><br>    Defendant and Appellant. | G061340<br><br>(Super. Ct. No. 20WF2321)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Robert A. Knox, Judge.  Affirmed.  Motion for judicial notice denied.

Mi Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Stephanie A. Mitchell, Deputy Attorneys General, for Plaintiff and Respondent.

Hoang Nam Minh Le appeals from a judgment after a jury convicted him of attempted voluntary manslaughter and unlawful taking of a vehicle. Le argues there were evidentiary and sentencing errors. None of his contentions have merit, and we affirm the judgment.

FACTS

Because Le asserted self-defense at trial and the issues on appeal are limited, a brief recitation of the facts will suffice. We recite the facts in the light most favorable to the judgment. (*People v. Curl* (2009) 46 Cal.4th 339, 342, fn. 3.)

Le stole a Toyota Tacoma (truck). There may have been a foldable knife with a three-inch blade in the truck.

Days later, a security guard at a local public agency (agency) saw the truck drive onto the property after midnight. On a surveillance camera, the guard saw a man, Le, climb out of the driver's side window. He saw another man, Desmond Jackson, get out of the front passenger door, retrieve a backpack, stumble, and fall on the ground. Le drove away. The guard called 911.

Police officers arrived and found Jackson riddled with stab wounds to his upper torso. Officers searched him but found no weapons, drugs, or drug paraphernalia.

At the hospital, Jackson refused to say what happened. He had between 16 and 18 stab wounds to his neck, chest, and back, a fractured rib, and a lacerated lung. His injuries were potentially life-threatening if left untreated. His urine sample preliminarily tested positive for amphetamine and tetrahydrocannabinol (THC). Jackson passed away months later from unrelated causes.

Surveillance video, physical evidence, forensic evidence, and eyewitness evidence led police to Le; they found no weapon. Officers arrested Le at his parents' house. In his room, they found keys to the truck and what appeared to be methamphetamine and drug paraphernalia. Le's mother (Mother) told a detective that she would search Le for knives and lighters each time he left the house.

2

An amended information charged Le with attempted murder (Pen. Code, §§ 664, subd. (a), 187, subd. (a)[1] (count 1)), and unlawful taking of a vehicle (Veh. Code, § 10851, subd. (a) (count 2)). As to count 1, the information alleged Le inflicted great bodily injury (§ 12022.7, subd. (a)) and used a deadly weapon (§ 12022, subd. (b)(1)). It also alleged the following aggravating factors as to count 1: the offense involved great violence and great bodily harm (Cal. Rules of Court, rule 4.421(a)(1)[2]); Le was armed with and used a weapon (rule 4.421(a)(2)); Le had previously engaged in violent conduct (rule 4.421(b)(1)); Le suffered prior convictions (rule 4.421(b)(2)); and Le suffered a prior prison term (rule 4.421(b)(3)).

Before trial, the parties litigated in limine motions concerning Le's and Jackson's prior convictions, which we discuss below. At trial, after the prosecution's evidence, Le testified.

Le stated he was in the truck smoking methamphetamine when a stranger, Jackson, asked him for a ride. Le agreed. After stopping at a gas station, he got on the freeway. He started to doze but Jackson screamed, which caused him to get off the freeway.

Le drove to the agency's parking lot and parked far away to smoke methamphetamine to wake up. Le looked for his drugs in the cup holder, but they were gone. He asked Jackson if he saw his drugs.

Jackson showed the bag of drugs with his left hand and a knife with his right hand. Before Jackson could finish saying something, Le grabbed the knife blade with his left hand and Jackson's right wrist with his right hand. Jackson pushed the knife towards Le. Le struggled to turn the knife towards Jackson and "poke[d] him in the chest

---

[1]     All further statutory references are to the Penal Code, unless otherwise indicated.

[2]     All further references to rules are to the California Rules of Court.

3

one time." After Jackson got on top of him, Le got the knife from him and "poke[d] him in his back a couple times." Le did not intend to kill Jackson—he was acting in self-defense.[3] Their struggle for control of the knife spilled into the backseat.

When Jackson regained control of the knife, Le climbed out of the driver's side window because he feared for his life. He opened the driver's side door to see if Jackson was in the truck. Seeing he was not,[4] Le got back in the truck. When Jackson opened the passenger side door, Le panicked and got out of the truck. Le looked for Jackson and maybe saw him outside the truck.

When Le got back in the truck, Jackson "shut the door or something like that." Le drove away. He later found the knife on the passenger's side floor between the seat and the door; it was not his. He dumped the knife in a trashcan.

Le admitted Mother searched him for knives and lighters when he left the house. He also admitted he sold drugs.

After the close of evidence, the trial court informed the jury Le suffered misdemeanor convictions in 2013 and 2020 for possession of a switchblade. As to Le, the parties stipulated to the following: "'In 2015, . . . Le was convicted of a misdemeanor for unlawfully possessing flammable material and an incendiary device near a home with the intent to use the material and device to burn a structure. He was also convicted of a misdemeanor for threatening [a victim] to commit a crime which would result in great bodily injury and with the intent it be taken as a threat. In 2017, . . . Le was convicted of a felony for unlawfully possessing flammable material and an incendiary device near a home with the intent to use the material and device to burn a structure.'" With respect to

---

[3] Le's trial counsel argued he acted in self-defense and the amount of force was reasonable because Jackson "kept coming at him."

[4] Surveillance video showed Jackson in the truck.

4

Jackson, the parties stipulated he suffered felony convictions in 2009 and 2012 for assault and the 2017 felony conviction for assault with a deadly weapon, "specifically his teeth."

The jury acquitted Le of attempted murder but convicted him of attempted voluntary manslaughter.[5] The jury found true he personally used a deadly weapon and inflicted great bodily injury (§§ 12022.7, subd. (a), 12022, subd. (b)(1); rule 4.421(a)(1), (2)).

At the sentencing hearing, which we discuss below in greater detail, the trial court sentenced Le to the upper term of five years six months on count 1 because he used a knife to stab the victim 19 times. The court imposed a consecutive three years on the great bodily injury enhancement and struck the weapon enhancement. With respect to count 2, the court imposed a consecutive sentence of eight months. Le's total prison term was nine years two months.

## DISCUSSION

### I. Exclusion of Evidence

Le argues the trial court abused its discretion by excluding a portion of the factual basis of Jackson's 2017 conviction. We disagree.

### A. Background

Before trial, the prosecution filed an in limine motion to limit evidence of Jackson's character for violence (Evid. Code, § 352). Recognizing a defendant may offer evidence of the victim's character for violence to show he acted in conformity with that character trait (Evid. Code, § 1103, subd. (a)(1)), the prosecution stated it would stipulate Jackson suffered a 2017 conviction for assault with a deadly weapon (§ 245, subd. (a)(1)) (2017 conviction). The prosecution, however, objected to admission of the factual basis of his guilty plea, specifically that "'[He] did willfully and unlawfully commit an assault upon the [victim] with a deadly weapon and instrument, namely [his] teeth, which [he]

_____

[5]     It also convicted him of count 2.

5

used to bite through and off [the victim's] ear.'" The prosecution argued the underlying facts were inflammatory and unnecessary to establish Jackson was violent. The prosecutor added that if Le offered evidence of Jackson's character for violence, the prosecution would offer evidence Le suffered two convictions for possessing arson materials and one conviction for making criminal threats.

Le filed an in limine motion seeking to admit evidence of Jackson's prior convictions. Citing to Evidence Code section 1103, subdivision (a)(1), he sought to admit evidence of the 2017 conviction and the factual basis for Jackson's plea.

At a hearing, Le's trial counsel sought admission of both the 2017 conviction and the factual basis for the plea. The prosecutor agreed the 2017 conviction was admissible but argued that was sufficient to establish Jackson's character for violence. The prosecutor contended the factual basis was irrelevant because this case involved a knife and it was inflammatory because it suggested Jackson bit the victim's entire ear off. The prosecutor did not object to including the portion that stated the deadly weapon was his teeth. Le's trial counsel sought admission of the entire factual basis. After noting the language at issue was not an element of the crime, the trial court took the matter under submission. After addressing the admissibility of Jackson's other prior convictions to establish his violent character, the court returned to the 2017 conviction. The court ruled it would exclude the language Jackson bit off the victim's ear because it was dissimilar to the weapon in this case, a knife, and it was unduly prejudicial.

The trial court next considered the prosecution's motion to admit evidence of Le's character for violence. Le's trial counsel agreed the prosecution had a right to offer that evidence in rebuttal. The prosecutor stated Le suffered two convictions in 2015 (possession of arson materials and making criminal threats) and one conviction in 2017 (possession of arson materials). When the court asked what facts he sought to introduce from these convictions, the prosecutor indicated he and Le's counsel would draft a

6

stipulation. After a discussion concerning whether possession of arson materials was an act of violence, the court asked Le's counsel for a response. Counsel stated he would work with the prosecutor to draft a stipulation. After reviewing the relevant plea agreements, the court explained the factual bases provided evidence of a character for violence because of the required intent element. The court ruled evidence of Le's three prior convictions was admissible.

*B. Analysis*

Evidence must be relevant to be admissible. (Evid. Code, § 350.) Relevant evidence is evidence that tends to prove or disprove a disputed consequential fact. (Evid. Code, § 210; *People v. Hardy* (2018) 5 Cal.5th 56, 87.)

Evidence Code section 1101, subdivision (a), prohibits the admission of evidence of a person's character to prove his conduct on a specified occasion. Evidence Code section 1103, subdivision (a), provides an exception to that rule, stating, "In a criminal action, evidence of the character . . . of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by [s]ection 1101 if the evidence is: [¶] (1) Offered by the defendant to prove conduct of the victim in conformity with the character or trait of character." However, the trial court may exclude such evidence pursuant to Evidence Code section 352. (*People v. Gutierrez* (2009) 45 Cal.4th 789, 827-828 [exclude if probative value substantially outweighed by undue prejudice].) We review the trial court's evidentiary rulings for an abuse of discretion. (*People v. Mataele* (2022) 13 Cal.5th 372, 413-414 [we afford trial court great deference in evaluating whether its ruling was arbitrary].)

Here, the trial court did not abuse its discretion by excluding evidence Jackson "'bit[] through and off [the victim's] ear.'" Although evidence Jackson suffered a conviction for using his teeth as a deadly weapon was relevant and admissible to demonstrate he had a character for violence, the resulting injury had little, if any, probative value. This case involved a knife, not teeth. Additionally, the court performed

7

the required balancing and concluded the evidence was unduly prejudicial. Le has not demonstrated the court's weighing was arbitrary, capricious, or absurd. (*People v. Parker* (2022) 13 Cal.5th 1, 53 [trial court ""broad discretion"" in performing Evidence Code section 352 balancing].)

Le relies on *People v. DelRio* (2020) 54 Cal.App.5th 47 (*DelRio*), to support his assertion. In that case, the trial court excluded five categories of evidence demonstrating the victim had a character for violence because defendant was unaware of the victim's prior bad acts. (*Id.* at pp. 53, 55.) The appellate court reversed, stating whether defendant knew of the victim's violent conduct was irrelevant under Evidence Code section 1103. (*Id.* at pp. 55, 58.) The court explained the following: "'If this [violent] character was known to the defendant, the evidence tends to show the defendant's apprehension of danger; if it was not known, the evidence nevertheless tends to show that the victim was probably the aggressor.' [Citations.]" (*Id.* at p. 55.)

*DelRio* is of no assistance to Le because in that case, the trial court excluded all the evidence of the victim's character for violence because even though defendant did not know about the victim's prior violent conduct, that evidence tended to show the victim was probably the aggressor. That is not what happened here. The court allowed Le to offer evidence of Jackson's three prior assault convictions even though Le was unaware of the conduct to demonstrate Jackson had a character for violence and was probably the aggressor. Unlike *DelRio*, there was no wholesale exclusion of evidence of Jackson's prior bad acts.

Le's primary argument is the trial court erred by excluding the evidence because it tended to show his conduct was objectively reasonable. Contrary to Le's claim, *People v. Bates* (2019) 35 Cal.App.5th 1 (*Bates*), does explain an important distinction.

In *Bates*, when addressing whether there was instructional error, the court referenced Evidence Code section 1103 and stated the following: "The admissibility of

evidence to show a *victim's* conformity with a violent character is an entirely different issue from whether a *defendant's* conduct or belief was reasonable when the defendant had no knowledge of the victim's violent character. While the former focuses on the victim's conduct, the latter focuses on the defendant's state of mind." (*Bates, supra,* 35 Cal.App.5th at p. 11 & fn. 5.)

Here, at trial, Le moved to admit evidence of Jackson's character for violence based solely on Evidence Code section 1103. We hesitate to speculate concerning trial tactics, but it is reasonable to assume Le did not assert his state of mind as an independent basis for admissibility because at the time of the incident he was unaware of Jackson's prior bad acts. Indeed, in his reply brief, Le states "[he] never contended that the evidence should have been admitted for a purpose other than under Evidence Code section 1103, subdivision (a)(1)." This is why the Attorney General contends Le forfeited appellate review of this theory. Nevertheless, under these circumstances, for the evidence to be relevant to Le's state of mind he would have had to have knowledge of Jackson's prior bad acts. He didn't.

Le suggests this evidence was relevant because it would explain why after he got the knife away from Jackson, Jackson acted aggressively and violently and it was "objectively reasonable" for him to "repeatedly stab" Jackson. Repeatedly stabbing an unarmed man when he could have fled was not objectively reasonable.

Le complains the trial court's ruling was one-sided and favored the prosecution because it excluded a portion of the factual basis of Jackson's 2017 conviction while admitting the factual basis for his prior convictions. First, Le did not challenge the trial court's rulings regarding the prosecution's motion to admit evidence of his prior bad acts. Second, the admissibility of evidence requires careful scrutiny of relevance and undue prejudice as to the proffered evidence, not by comparison to other evidence. (See *People v. Steele* (2002) 27 Cal.4th 1230, 1243 [evidence that tends to prove or disprove a disputed consequential fact relevant].)

9

Contrary to Le's claim, the trial court's ruling did not violate his federal constitutional right to present a defense. "[T]he application of the ordinary rules of evidence under state law does not violate a criminal defendant's federal constitutional right to present a defense, because trial courts retain the intrinsic power under state law to exercise discretion to control the admission of evidence at trial." (*People v. Abilez* (2007) 41 Cal.4th 472, 503.) Based on the court's rulings, the jury heard evidence Jackson suffered two felony assault convictions and the 2017 conviction for assault with a deadly weapon, his teeth. From this evidence, the jury could reasonably conclude he had a character for violence. The court excluded evidence that during the 2017 incident he used his teeth to bite through or off the victim's ear. The exclusion of this evidence on a subsidiary point did not prevent Le from presenting his defense that Jackson was innately violent. (*People v. Rogers* (2013) 57 Cal.4th 296, 346 [excluding defense's evidence on minor point does not impair accused's due process right to present defense].)

Thus, the trial court did not abuse its discretion by excluding a portion of the factual basis of Jackson's 2017 conviction. Because we conclude the court did not err, we need not address Le's contention he was prejudiced by the court's evidentiary ruling.

## II. Sentencing

Le argues the trial court committed two sentencing errors. Neither contention has merit.

### A. Background

Both parties filed sentencing briefs. In Le's, he stated there was one mitigating factor, Jackson was the initiator, aggressor, or provoker. (Rule 4.423(a)(2).) The probation report indicated Le was a longtime methamphetamine user and took two medications to treat mental illness. The report included several aggravating circumstances, including the offense involved great violence and great bodily harm (rule

10

4.421(a)(1)), and Le was armed with a weapon (rule 4.421(a)(2)). The report included no mitigating circumstances.

At the April 2022 sentencing hearing, the trial court stated it had read and considered the probation report and the sentencing briefs. Citing to section 1170, the court stated it had to impose the middle term unless the defendant stipulated to or the jury found true aggravating circumstances. The court added it could not impose the upper term based on the fact of any enhancement upon which the court imposes sentence. The court explained it had to impose the middle term because the two aggravating circumstances were the same as the enhancements. Its tentative sentence on count 1 was the middle term of three years plus three years for the great bodily injury enhancement and one year for the deadly weapon enhancement for a total of seven years.[6]

The prosecutor requested the trial court impose the upper term. The prosecutor stated that although he did not submit the three additional aggravating circumstances to the jury, the court could rely on them because Le admitted them when he testified. He also cited to Mother's testimony she patted him down to establish Le had a character for violence.

The trial court stated it did not disagree with the prosecutor's arguments but section 1170, subdivision (b), required the aggravating factors to be found true by the jury. The prosecutor requested the court dismiss the weapon enhancement (§ 12022, subd. (b)(1)) and rely on the weapon aggravating circumstance (rule 4.421(a)(2)) to impose the upper term.

Le's trial counsel said it was inappropriate to change the sentence after the trial court announced its tentative sentence. After the court replied that was the purpose of the tentative sentence, counsel contended the fact the court intended to impose

---

[6]    The tentative sentence on count 2 was a consecutive eight months.

11

consecutive sentences was an appropriate sentence. The court imposed sentence as detailed above.

*B. Analysis*

*1. Enhancement*

Relying on Senate Bill Nos. 567 and 81, both effective January 1, 2022, before the sentencing hearing in this case, Le contends the trial court erred by striking the weapon enhancement and relying on the weapon aggravating circumstance to impose the upper term on count 1. Not so.

Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3) (SB 567) amended section 1170 by making the middle term the presumptive sentence for a term of imprisonment unless certain circumstances exist. (§ 1170, subd. (b)(1), (2).) The trial court may now impose an upper term sentence only when there are circumstances in aggravation and the facts underlying the aggravating circumstances have been stipulated to by the defendant or found beyond a reasonable doubt by the trier of fact. (§ 1170, subd. (b)(2).) Section 1170, subdivision (b)(5), provides "[t]he court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." The bill's author explained that in this period of mass incarceration, defendants must be given the opportunity to refute alleged aggravating acts to ensure the harshest sentences are appropriate and reverse the "carceral system." (Assem. Floor Analysis, Sen. 3d reading analysis of Sen. Bill No. 567 (2021-2022 Reg. Sess.) as amended Sept. 3, 2021, p. 2.) Rule 4.420(g) provides as follows: "To comply with section 1170[, subdivision] (b)(5), a fact charged and found as an enhancement may be used as a reason for imposing a particular term only if the court has discretion to strike the punishment for the enhancement and does so. The use of a fact of an enhancement to impose the upper term of imprisonment is an adequate reason for striking the additional term of imprisonment, regardless of the effect on the total term."

Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1) (SB 81) amended section 1385 to include subdivision (c), which provides that "[n]otwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385, subd. (c)(1).) Section 1385, subdivision (c)(2), provides as follows: "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." One of the mitigating circumstances is: "Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed." (§ 1385, subd. (c)(2)(B).) The bill's author explained that in this time of mass incarceration, the time for the enhancement was often greater than the time for the crime and a court should impose an enhancement only when it protects the public. (Assem. Floor Analysis, Sen. 3d reading analysis of Sen. Bill No. 81 (2021-2022 Reg. Sess.) as amended Aug. 30, 2021, p. 2.)

Citing to section 1170's and section 1385's legislative history, Le contends the trial court erred because "the Legislature intended to create a more humane criminal justice system . . . by 'reversing' [California's] carceral system and 'the mass incarceration trend.'"[7] His public policy argument fails because a statute's plain

---

[7]     Le questions the Attorney General's citation to a legislator's letter concerning SB 81. He cites to case authority that holds an individual legislator's statements, including the author's statements, do not represent the Legislature's intent. (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062.) This is perplexing because Le's argument on this issue rests entirely on SB 567's and SB 81's authors' statements.

language is the first and best indicator of the Legislature's intent. (*People v. Licas* (2007) 41 Cal.4th 362, 367.) The plain language of neither section prohibited the court from striking the weapon enhancement and relying on the weapon aggravating circumstance to impose the upper term on count 1. We decline Le's invitation to read these sections to conform to the "spirit" of SB 567 and SB 81 when neither section prohibited the court's sentencing choices.

Relying on section 1385, subdivision (c)(2)(B), Le complains multiple enhancements are a mitigating circumstance, but the trial court struck the weapon enhancement to increase the sentence not reduce it. He notes the court could have stricken the three-year great bodily injury enhancement but instead struck the one-year weapon enhancement. A trial court enjoys broad discretion in making its sentencing choices and those choices will be affirmed on appeal unless there is a clear showing that the trial court's actions were arbitrary or irrational. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)

Finally, Le states rule 4.420(g) can also be read to conform to the spirit of SB 81, and if it cannot, statutes trump rules. Again, the plain language of the rules of court governs and rule 4.420(g) authorized the trial court's choice to strike the weapon enhancement and use the fact Le used a weapon as an aggravating factor to impose the upper term. (*In re Marriage of Lin* (2014) 225 Cal.App.4th 471, 475 [rules of statutory construction govern interpretation of rules of court].) Additionally, neither section 1170 nor section 1385 trump rule 4.420(g) because there is nothing in those sections that

---

We deny the Attorney General's motion to take judicial notice of the legislative history of SB 567 and SB 81. "'A motion for judicial notice of published legislative history, such as the . . . analysis here, is unnecessary. [Citation.] "Citation to the material is sufficient. [Citation.] We therefore consider the request for judicial notice as a citation to those materials that are published." [Citation.]' [Citation.]" (*Grassi v. Superior Court* (2021) 73 Cal.App.5th 283, 290 (*Grassi*).)

14

forbade the court's sentencing choice in question. Finally, when SB 567 and SB 81 went into effect, rule 4.420(g)'s predecessor, rule 4.420(c), held similarly. "We presume the Legislature 'was aware of existing related laws' when it enacted [the statute], and that it 'intended to maintain a consistent body of rules.' [Citation.]" (*Grassi, supra,* 73 Cal.App.5th at p. 307.) Had the Legislature intended to prohibit a trial court from striking an enhancement to rely on the fact of the enhancement as an aggravating circumstance to impose an upper term, it could have done so. In sum, Le has not shown the court was precluded from striking the weapon enhancement and relying on the weapon aggravating circumstance to impose the upper term on count 1 or that it abused its discretion by doing so.

*2. Mitigating Factors*

Acknowledging his trial counsel did not assert his mental illness and drug addiction were mitigating circumstances, Le claims the trial court abused its discretion when it disregarded these mitigating circumstances and remand is required. Anticipating the Attorney General's forfeiture argument,[8] Le states he received ineffective assistance of counsel. On this record, we cannot conclude the court erred or Le was prejudiced.

Generally, "unless the record affirmatively reflects otherwise, the trial court will be deemed to have considered the relevant criteria, such as mitigating circumstances, enumerated in the sentencing rules. [Citation.]" (*People v. Zamora* (1991) 230 Cal.App.3d 1627, 1637.) The record included evidence to demonstrate Le suffered from mental illness and drug addiction. Both are mitigating circumstances under the California Rules of Court. (Rule 4.423(b)(2), (4).) Pursuant to *Zamora*, we can conclude the court considered the mitigating circumstances and found them unpersuasive.

---

[8] "[A] defense attorney who fails to adequately understand the available sentencing alternatives, promote their proper application, or pursue the most advantageous disposition for his client may be found incompetent. [Citations.]" (*People v. Scott* (1994) 9 Cal.4th 331, 351.)

15

On this record, Le's claim he received ineffective assistance of counsel also fails. "To obtain relief, he 'must prove "'that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and that counsel's deficient performance was prejudicial, i.e., that a reasonable probability exists that, but for counsel's failings, the result would have been more favorable to the defendant.'"' [Citation.]" (*In re Champion* (2014) 58 Cal.4th 965, 1007.)

Here, Le's trial counsel did not assert Le's mental illness or drug addiction were mitigating circumstances in his sentencing brief or at the sentencing hearing. His lone mitigating circumstance was Jackson was the aggressor. On this record, we cannot conclude trial counsel's representation was objectively unreasonable. Le testified he feared for his life when Jackson brandished a knife. Counsel presented no evidence from a mental health or addiction expert. During closing argument, counsel argued zealously that Le feared for his life when Jackson brandished a knife and "kept coming at him." Based on the evidence and argument, counsel likely believed he had a righteous claim of self-defense. To argue in the alternative, that psychosis or drugs contributed to Le's conduct, would have been inconsistent and likely would have undercut his defense and lessened any possibility of a complete defense verdict.

Additionally, it was not reasonably probable Le would have received a more favorable result had counsel raised these mitigating circumstances. The trial court's comments at the sentencing hearing established it considered this a vicious crime, twice mentioning Le stabbed Jackson 18 or 19 times. We can reasonably conclude the court considered Le's conduct aggravated. On this record, Le has not established the court erred or that he received ineffective assistance of counsel. We note a habeas corpus petition is a better vehicle for deciding an ineffective assistance of counsel claim. (*People v. Carter* (2005) 36 Cal.4th 1114, 1189.)

16

DISPOSITION

The judgment is affirmed. The Attorney General's motion for judicial notice is denied.


O'LEARY, P. J.

WE CONCUR:


GOETHALS, J.


MOTOIKE, J.