[No. A111119. First Dist., Div. Three. Sept. 29, 2005.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SOLANO COUNTY, Respondent;
RICHARD JAMES FERGUSON, Real Party in Interest.

## COUNSEL

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Lisa Ashley Ott and Amy Haddix, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Susan K. Amato, under appointment by the Court of Appeal, for Real Party in Interest.

## Opinion

**PARRILLI, J.**—Does a person "willfully resist" a peace officer when that person flees from an officer attempting a lawful arrest? In this writ proceeding the People seek relief from a trial court order setting aside two counts charging violations of Penal Code section 148.10,[1] which applies when a person who willfully resists a peace officer discharging his or her duties proximately causes the officer to suffer serious bodily injury or death as a consequence of that person's willful resistance. The People argue the trial court erred in concluding flight does not constitute "willful resistance." We agree and grant a peremptory writ of mandate.

### Factual and Procedural Background

On April 26, 2005, Sheriff's Deputy Brian Barrow encountered real party in interest Richard James Ferguson on the street in Vallejo. Another deputy, Jim Betts, responded as backup and recognized Ferguson from an encounter a few weeks earlier. The deputies received information that Ferguson had two outstanding felony warrants for his arrest. As Deputy Betts approached, Ferguson fled on foot after Deputy Barrow remarked that Ferguson had given him a false name. The deputies gave chase and repeatedly ordered Ferguson to stop. The officers were in full uniform, although Barrow was not wearing his hat.

The deputies pursued Ferguson through a residential back yard. It was dark and Betts used a flashlight while pursuing Ferguson. Deputy Barrow fell in overgrown vegetation during the pursuit. Deputy Betts continued to pursue Ferguson but lost his footing on the steep and overgrown backyard while trying to grab Ferguson. Betts put his arm out to break his fall and felt pain after something snapped.

Deputies Barrow and Betts continued the pursuit. Ferguson picked up a stepladder and threw it at Deputy Betts, who dodged the ladder. Ferguson then grabbed metal scaffolding and attempted to throw it at Deputy Betts. Betts avoided the scaffolding, grabbed Ferguson by the neck, and forced him to the ground. Working together, Deputies Barrow and Betts managed to handcuff Ferguson.

As a consequence of falling during the pursuit, Deputy Barrow suffered a fractured humerus. Deputy Betts suffered torn back muscles and ligaments and a possible fracture to his left wrist as a result of his fall.

Following a preliminary hearing, a magistrate held Ferguson to answer for the crimes of willfully resisting a peace officer resulting in death or serious

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

bodily injury (§ 148.10, subd. (a)) (two felony counts), and felony assault on a peace officer (§ 245, subd. (c)). Ferguson filed a section 995 motion to set aside the information, arguing in part that the People failed to establish he engaged in "willful resistance" as required by section 148.10, subdivision (a). According to Ferguson, he did not cause the officers to fall during the chase and at most "delayed" his arrest by eluding capture.

The trial court granted the section 995 motion as to the two counts of willfully resisting a peace officer resulting in death or serious bodily injury and denied the motion as to the one count of felony assault on a peace officer. This petition followed. We issued an order to show cause and stayed the trial on the remaining charge against Ferguson.

DISCUSSION

■ An order setting aside a portion of an information is appealable. (§ 1238, subd. (a)(1).) An appeal may not be an effective remedy, however, when the trial court's partial dismissal order is erroneous and may result in multiple trials. (*People v. Superior Court (Caudle)* (1990) 221 Cal.App.3d 1190, 1193, fn. 2 [270 Cal.Rptr. 751].) Interlocutory writ review is appropriate here to avoid such a piecemeal resolution of the case. (*Ibid.*; see also *People v. Superior Court (Bell)* (2002) 99 Cal.App.4th 1334, 1338 [121 Cal.Rptr.2d 836].)

■ Upon review of an order granting a defendant's motion to set aside the information, we evaluate the evidence at the preliminary examination "to determine whether as a matter of law it is sufficient" to support the magistrate's decision to hold defendant to answer the charged offense. (*People v. Superior Court (Jurado)* (1992) 4 Cal.App.4th 1217, 1226 [6 Cal.Rptr.2d 242].) "However, where the facts are undisputed, the determination of probable cause 'constitute[s] a legal conclusion which is subject to independent review on appeal.' [Citation.]" (*People v. Superior Court (Bell), supra,* 99 Cal.App.4th at p. 1339.) For purposes of his section 995 motion, Ferguson did not challenge the sufficiency of the evidence that the sheriff's deputies had a lawful right to arrest him, that he fled when they attempted to arrest him, or that the deputies suffered serious bodily injury as a proximate result of their pursuit of Ferguson. Instead, Ferguson argues that flight does not constitute "willful resistance" within the meaning of section 148.10. Because the petition raises a purely legal issue of statutory interpretation, our review is de novo.

■ "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]" (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 221 [17 Cal.Rptr.3d

842, 96 P.3d 141], quoting *People v. Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420].) "We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citations.]" (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].)

Section 148.10, subdivision (a) provides in relevant part that "[e]very person who *willfully resists* a peace officer in the discharge or attempt to discharge any duty of his or her office or employment and whose willful resistance proximately causes death or serious bodily injury to a peace officer" is guilty of either a felony or a misdemeanor. (Italics added.) The information charges Ferguson with two felony counts of violating section 148.10, subdivision (a).

The issue raised by the petition is one of first impression. There are no reported cases construing section 148.10 or defining "willful resistance" within the meaning of the statute.

Webster's defines "resistance" as "passive or active opposition." (See Webster's 3d New Internat. Dict. (2002) p. 1932.) Resistance, at least in common parlance, does not *require* actual force directed against the person or thing that is being resisted. The usual and ordinary meaning of resistance would appear to encompass flight, which is an act of opposition by refusing to submit to a lawful command to stop. "Willfully" is defined in the Penal Code as "simply a purpose or willingness to commit the act[] or make the omission . . . ." (§ 7, subd. (1).)

Although no reported cases have construed the term "willful resistance" as used in section 148.10, several courts have held that flight from an officer violates section 148, subdivision (a)(1), which makes it a misdemeanor to "willfully resist[], delay[], or obstruct[] any [peace] officer . . . in the discharge or attempt to discharge any duty of his or her office or employment . . . ." (See *People v. Quiroga* (1993) 16 Cal.App.4th 961, 969 [20 Cal.Rptr.2d 446], and cases cited therein.) Section 148, unlike section 148.10, criminalizes not just "willful resistance" but also "delay" and "obstruction." According to Ferguson, the majority of cases interpreting section 148 "lump

together the three categories of conduct" without distinguishing whether an action constitutes "resisting," "delaying," or "obstructing."

Ferguson nevertheless relies on one case construing section 148, *People v. Allen* (1980) 109 Cal.App.3d 981 [167 Cal.Rptr. 502] (*Allen*), because he contends it makes a meaningful distinction among "resisting," "delaying," and "obstructing" when considering how to characterize a defendant's flight from an officer. In *Allen,* the defendant fled when he saw a police officer approaching him. (*Id.* at p. 984.) The officer saw what he suspected was stolen property in an open trunk in the vehicle from which the defendant fled. (*Id.* at pp. 983–984.) The officer arrested the defendant for violating section 148 after finding him hiding under a table. (109 Cal.App.3d at p. 984.) In assessing whether the arrest was valid, the court reasoned that "[t]he actions of [the defendant] (running and hiding) caused a *delay* in the performance of [the officer's] duty." (*People v. Allen, supra,* 109 Cal.App.3d at p. 987, italics added.) The court placed special emphasis on section 148's inclusion of the word "delays" in addition to "resists" and "obstructs," stating "it would appear that the physical activity that [the defendant] engaged in, flight and concealment, which *delayed* the officer's performance of his official duty, violated the statute." (109 Cal.App.3d at p. 986, italics in original.)

Ferguson seizes upon the analysis in *Allen* to argue that flight constitutes "delay" but not "willful resistance." Invoking the principle of statutory construction that a court must not insert what has been omitted from a statute (Code Civ. Proc., § 1858), Ferguson claims the trial court was correct in reading section 148.10 as though it omitted the term "delay," which the Legislature saw fit to exclude from the statute. Because acts that merely "delay" an officer's performance of his or her duties are not encompassed within section 148.10, Ferguson argues, flight from an officer cannot give rise to a violation of the statute.

We are not persuaded by Ferguson's analysis. The *Allen* court's conclusion that flight constitutes delay does not rule out the possibility that flight also constitutes willful resistance or obstruction. Having found a violation of section 148, the *Allen* court had no occasion to consider the further question of whether flight may also constitute willful resistance. Nor are the prohibited acts mutually exclusive. Indeed, in *People v. Quiroga* the court found that a defendant's refusal to disclose his identity at the booking interview—a passive act of opposition—"served to resist, delay and obstruct" the police officer. (*People v. Quiroga, supra,* 16 Cal.App.4th at p. 972.)

To the extent there is any ambiguity in the term "willful resistance," we may turn to the legislative history, which in this case supports the People's

interpretation of section 148.10.[2] (*Day v. City of Fontana, supra,* 25 Cal.4th at p. 272 [where statutory language is ambiguous, court may look to legislative history to ascertain intent].) We note that Ferguson objects to our taking judicial notice of the legislative history of section 148.10 proffered by the People. The People request that we take judicial notice of several legislative committee reports, Legislative Counsel's Digests prepared as the bill was introduced and subsequently amended, and two letters to the Governor from the bill's author, Senator Quentin Kopp, urging passage of the legislation. Ferguson contends we should disregard all legislative materials except for those that pertain directly to the statute as ultimately enacted. In other words, Ferguson would have us ignore the history of the bill as it made its way through the legislative process. Characterizing the letters from the bill's author as the opinion of an individual legislator, Ferguson urges us to ignore them. And, Ferguson objects on the basis there is no representation the legislative history presented by the People is complete.

█ Ferguson's objections are not well taken. In order for legislative history to be cognizable, it must reflect the collegial view of the Legislature as a whole. (See *Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062 [48 Cal. Rptr. 2d 1, 906 P.2d 1057].) Legislative committee reports and analyses, including statements pertaining to the bill's purpose, are properly the subject of judicial notice (*Hutnick v. United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7 [253 Cal.Rptr. 236, 763 P.2d 1326]), as are digests of the Legislative Counsel. (Cf. *Pacific Gas & Electric Co. v. Department of Water Resources* (2003) 112 Cal.App.4th 477, 482–483 [5 Cal.Rptr.3d 283].) Also appropriate for judicial notice are prior versions of a bill as well as analyses of such earlier versions, which shed light on how the Legislature arrived at the ultimately enacted statute. (*Quintano v. Mercury Casualty Co., supra,* 11 Cal.4th at p. 1062, fn. 5; *People v. Watie* (2002) 100 Cal.App.4th 866, 884–885 [124 Cal.Rptr.2d 258].)

Statements of an individual legislator, including the bill's author, are generally not considered in construing a statute. (*Quintano v. Mercury Casualty Co., supra,* 11 Cal.4th at p. 1062.) An exception exists, however, when the letter constitutes a "reiteration of legislative discussion and events leading to adoption of proposed amendments rather than merely an expression of personal opinion." (*Martin v. Szeto* (2004) 32 Cal.4th 445, 450–451 [9 Cal.Rptr.3d 687, 84 P.3d 374], quoting *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 700 [170 Cal.Rptr. 817, 621 P.2d 856].) The exception applies here because Senator Kopp's letters explain the events leading to the adoption of amended language after Senator Kopp first urged the bill's passage. As for whether the legislative

---

[2] The People did not provide the trial court with the statute's legislative history, and there's nothing to suggest it was considered by the trial court independently.

history is complete, Ferguson has offered nothing to suggest the history presented by the People is incomplete or misleading. Indeed, it is ironic that Ferguson claims the bill's history is incomplete at the same time he asks us to ignore most of that history. Accordingly, we grant the People's request for judicial notice.

Section 148.10 was added to the Penal Code in 1990 by Senate Bill No. 2172 (1989–1990 Reg. Sess.). (Stats. 1990, ch. 1155, § 1, p. 4810.) Legislative analyses of the various versions of the bill state it was modeled after Vehicle Code section 2800.3, which imposes alternate felony or misdemeanor punishment when a person *fleeing in a vehicle* from a peace officer proximately causes death or serious bodily injury to any person. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 2172 (1989–1990 Reg. Sess.) as amended May 29, 1990, p. 2; Sen. Com. on the Judiciary, Analysis of Sen. Bill No. 2172 (1989–1990 Reg. Sess.) as introduced Feb. 22, 1990, p. 2.) Before enactment of section 148.10, a person *fleeing on foot* could not be charged with a felony if the pursuing officer died or was seriously injured during the pursuit. (Sen. Com. on the Judiciary, Analysis of Sen. Bill No. 2172 (1989–1990 Reg. Sess.) as introduced Feb. 22, 1990, p. 2.) Although criminal liability for the flight might be predicated on section 148, violation of that statute is a misdemeanor. Senate Bill No. 2172 was designed to fill the gap in the law that limited a fleeing suspect's criminal liability to a misdemeanor even when the pursuing officer was killed or seriously injured during a pursuit on foot. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 2172 (1989–1990 Reg. Sess.) as amended May 29, 1990, p. 2.)

Senator Kopp sponsored the bill in response to two separate incidents in which San Francisco police officers were killed or seriously injured while pursuing suspects on foot. One bill analysis explained: "The San Francisco District Attorney's Office supports this measure on the basis of two recent incidents . . . . Last November, Officer John Blessing chased a fleeing suspect involved in an alleged drug matter. Officer Blessing was killed by a motorist while trying to stop traffic for other pursuing officers. In January, officers chased a suspect on parole after his involvement in a drug transaction. One officer shattered her ankle and tore a ligament when she slipped on a metal grate during the pursuit." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 2172 (1989–1990 Reg. Sess.) as amended May 29, 1990, p. 2.) The analysis further indicated that "[u]nder this bill, if an officer *chased a suspect, tripped, fell, and suffered a permanent injury,* the suspect . . . would be subjected to a felony penalty even though the suspect did not directly cause and did not intend to cause an injury, and even if a death or serious bodily injury was not foreseeable." (*Ibid.,* italics added.)

 In short, not only does the legislative history indicate the Legislature's intent to include flight within the definition of "willful resistance," but flight on foot was precisely the situation the statute was intended to cover. Any legislator reviewing the various analyses of Senate Bill No. 2172 could not help but be aware of this fact.

Nevertheless, the trial court, lacking the benefit of the legislative history, theorized that by excluding the terms "delay" and "obstruct" from section 148.10 the Legislature necessarily intended to narrow the reach of the felony statute in comparison to section 148, the misdemeanor statute, which includes those terms. While the legislative history supports the conclusion that section 148.10 has a narrower application than section 148, it does not support the trial court's further conclusion that the Legislature intended to exclude *flight* from felony treatment. A brief history of Senate Bill No. 2172's course through the Legislature demonstrates the point.

Senate Bill No. 2172 was originally drafted as an amendment to section 148 and was intended to apply to all violations of the statute that result in death or great bodily injury to public officers, peace officers, or emergency medical technicians. (Legis. Counsel's Dig., Sen. Bill No. 2172 (1989–1990 Reg. Sess.) as introduced Feb. 22, 1990.) The Legislature amended the bill six times. In the first of these six amendments, the Senate limited felony punishment for violation of the statute to situations in which the "willful resistance" of a person proximately causes death or serious bodily injury to a public officer, peace officer, or emergency medical technician. (Legis. Counsel's Dig., Sen. Bill No. 2172 (1989–1990 Reg. Sess.) as amended May 2, 1990, p. 2.) All subsequent versions of the bill specified that felony treatment was available only as a consequence of a person's "willful resistance."[3] The legislation was ultimately rewritten to create a new section, Penal Code section 148.10, limited to situations in which a person "willfully resists" a peace officer, without reference to "delay" or "obstruction." (Legis. Counsel's Dig., Sen. Bill No. 2172 (1989–1990 Reg. Sess.) as amended Aug. 28, 1990, p. 2.)

Despite the amendment limiting the legislation's scope to acts of willful resistance, nothing in the legislative analyses prepared following that amendment suggests the Legislature intended to exclude foot pursuits from felony

---

[3] The People submitted only three of the six amended versions of the legislation to this court for consideration. On the court's own motion, we take judicial notice of the Legislative Counsel's Digests reflecting the remaining three versions of the legislation before it was ultimately enacted.

treatment. To the contrary, subsequent legislative analyses are consistent in describing the legislation as covering situations in which a suspect's flight proximately results in death or serious bodily injury to a pursuing officer. (See, e.g., Assem. Com. on Public Safety, Analysis of Sen. Bill No. 2172 (1989–1990 Reg. Sess.) as amended May 29, 1990, p. 2; Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 2172 (1989–1990 Reg. Sess.) as amended May 29, 1990, pp. 1–2.) Even after the legislation was amended to create a separate section lacking any reference to "delaying" or "obstructing" an officer's duties, the legislative analyses of the bill still referred to its purpose as being to punish criminals more severely when "a *pursuing* officer is hurt," and the arguments in support still cited the foot chases that gave rise to the bill's introduction. (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 2172 (1989–1990 Reg. Sess.) as amended Aug. 28, 1990, p. 2, italics added.)

Moreover, the Legislature's enactment of a new statute separate from section 148 did not indicate its intent to exclude flight from the scope of section 148.10. Senator Kopp's second letter to the Governor advocating passage of the legislation explains why the bill was amended to create a new section: "The bill . . . was removed from enrollment to accommodate concerns that somehow it could be interpreted to obviate a prosecution under Section 148 of the Penal Code for resisting arrest in the course of labor picketing, demonstrations or disturbing the peace. [¶] Therefore, I amended SB 2172 on August 28, 1990 to establish a new and separate subsection (Section 148.10 of the Penal Code) [—] the felony crime of proximately causing the death or serious bodily injury to a peace officer while willfully resisting arrest <u>on foot</u>." (Sen. Kopp, sponsor of Sen. Bill No. 2172 (1989–1990 Reg. Sess.), letter to Governor, Aug. 31, 1990, underscoring in original.) Thus, the amendments resulting in a new section 148.10 were intended to exclude conduct occurring during labor picketing, demonstrations, and disturbing the peace from the scope of felony prosecution.

█ There is nothing to indicate the various amendments were intended to exclude "flight" as a form of willful resistance. To conclude otherwise would undermine the very purpose of the legislation, which was designed to allow more severe punishment when an officer is seriously injured or killed during a foot pursuit of a fleeing suspect. Accordingly, not only is flight from lawful arrest encompassed within the usual and ordinary meaning of "willful resistance," but it is also consistent with the intent of the Legislature to permit prosecution under section 148.10 for flight resulting in death or serious bodily injury to the pursuing officer.

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order granting real party in interest's Penal Code section 995 motion as to counts one and two of the information and to enter a new and different order denying the motion in its entirety. The stay previously issued by this court shall be dissolved upon the issuance of the remittitur. (Cal. Rules of Court, rule 26.)

McGuiness, P. J., and Pollak, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied January 18, 2006. Chin, J., did not participate therein.