Filed 9/11/20  P. v. Flanigan CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>WILLIE FLANIGAN,<br><br>        Defendant and Appellant. | A158510<br><br>(San Francisco County<br>Super. Ct. No. SCN229719) |

Appellant Willie Flanigan struck and seriously injured bicycle patrol Officer Elia Lewin-Tankel while fleeing from police in a stolen vehicle.  He was convicted of numerous counts, including evading a peace officer causing serious bodily injury (Veh. Code, § 2800.3, subd. (a); count 1), resisting a peace officer and causing serious bodily injury to a peace officer (Pen. Code, § 148.10, subd. (a); count 4),[1] assault with a deadly weapon (§ 245, subd. (a)(1); count 5), unlawfully taking or driving a vehicle (Veh. Code, § 10851, subd. (a); count 6); reckless driving (Veh. Code, § 23103, subd. (a); count 8), leaving the scene of an accident resulting in injury (Veh. Code, § 20001, subd. (a); count 9), misdemeanor receiving stolen property (§ 496, subd. (a); count

---

[1] Further statutory references are to the Penal Code unless otherwise indicated.

1

10), misdemeanor driving without a license (Veh. Code, § 12500, subd. (a), count 11), and misdemeanor hit-and-run (Veh. Code, § 20002, subdivision (a); count 12). The jury further found that the assault had resulted in great bodily injury (§ 12022.7, subdivision (b)), that the reckless driving caused injury (Veh. Code, § 23103, subd. (a)), and that appellant left the scene of an accident that had resulted in permanent, serious injury (Veh. Code, § 20001, subds. (a) & (b)(2)). The court found that appellant had sustained two prison priors under section 667.5, subdivision (b) and sentenced him to prison for an aggregate term of 12 years 8 months.[2]

Appellant contends the assault conviction must be reversed because (1) the court declined to instruct on the defense of accident under section 26; (2) the court gave misleading instructions about the act constituting assault; and (3) the evidence was insufficient to support the assault conviction. Appellant also challenges his conviction for resisting a peace officer causing serious bodily injury to a peace officer, arguing that he was deprived of due process as to this charge because the information alleged he had resisted Sergeant Candeice Lewis and caused serious bodily injury to "said" officer when in fact, Officer Lewin-Tankel was the only officer who was injured. He argues that his prison priors should be stricken under Senate Bill 136 and that his one-year consecutive term for leaving the scene of an accident under Vehicle Code section 20001, subdivision (a) should be stayed under 654 because it was

---

[2] This consisted of the four-year upper term for assault with a deadly weapon plus a five year enhancement for the infliction of great bodily injury on that count, eight months consecutive (one-third the middle term) for taking or driving a vehicle, one year consecutive (one-third the middle term) for leaving the scene of an accident, and one year consecutive for each of the prison priors. Sentence on the remaining felony counts was either stayed or run concurrently, and appellant received credit for time served on the misdemeanor counts.

based on the same conduct as the assault.  Finally, appellant asks us to review the in camera hearings held on his motions to disclose police personnel records under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) and to disclose the identity of a confidential informant.  We will order the sentence modified to strike the prison priors, but otherwise affirm the judgment.

## I.  BACKGROUND

On October 18, 2017, a confidential informant told a San Francisco Police Department (SFPD) sergeant that a stolen tan Lexus SUV with switched license plates was being driven in the Tenderloin neighborhood and possibly contained a gun.[3]  The information was broadcast to officers on duty.

Sergeant John Conway was patrolling the area in an unmarked car when he heard the broadcast and began looking for the Lexus SUV.  He spotted it at a Shell gas station at Turk and Franklin Streets.  It was driven by appellant, who was wearing an orange reflective vest.  Sergeant Conway activated his patrol car's lights and the Lexus made a U-turn and drove from the gas station onto Franklin Street.  It "abruptly and quickly" crossed all lanes of traffic on Franklin and turned the wrong way down Larch Street, a one-way alley.  Sergeant Conway broadcast the SUV's direction to other officers.

Officers David Vizcay and Lewin-Tankel were partners on bicycle patrol.  They were wearing police uniforms and their bicycles were marked with SFPD emblems.  At some point, they were separated and Officer Vizcay saw the Lexus SUV turn from Larch Street onto Van Ness Avenue.  Appellant drove 15 to 20 miles per hour when turning, which was a high rate

---

[3] No evidence was ever presented to show that appellant possessed a gun during the events that led to this prosecution.

of speed for conditions, and did not stop to ensure the street was clear as one would typically do before turning from an alleyway onto a thoroughfare.

On Van Ness Avenue, appellant drove across two lanes of traffic into the median, which was closed for construction and blocked with traffic cones. Officer Vizcay pursued appellant on his bicycle as appellant sped down the median for half a block, knocking down traffic cones. He then turned left onto Turk Street right in front of a woman crossing with her husband and baby, forcing the family to stop in the middle of the intersection. He travelled down Turk Street to the intersection with Franklin Street, which had heavy traffic. Officer Vizcay dismounted his bicycle and ordered appellant to stop, but appellant instead turned the wrong way down Franklin, going "very fast" in the direction of ongoing traffic.

Sgt. Candeice Lewis arrived in her patrol car and began pursuing appellant into oncoming traffic on Franklin Street. She was soon joined by Officer Ryan McEachern. Appellant did not slow but drove into oncoming traffic for a full city block before turning onto Golden Gate Avenue and out of the officers' view.

On Golden Gate Avenue, appellant drove into a parking garage that was part of the Opera Plaza complex and sped through the garage at great speeds. He exited onto Turk Street at a high speed. At the same time, Officer Lewin-Tankel was riding his bicycle the wrong way down Turk Street. A Budget rental truck was parked near the exit of the parking garage. Appellant did not yield at the stop sign at the exit. He struck Officer Lewin-Tankel, looked behind him in the SUV's left mirror, and then sped up and left the scene.

While fleeing the scene, appellant hit and damaged the left side of a car that had slowed to make room for pursuing officers. After the collision, he

4

drove to the Panhandle area of the city, parked and removed the license plate on the Lexus. He also removed the reflective vest he was wearing and gave it to a man who was skateboarding nearby at the entrance to Buena Vista Park and then walked into the park. The same informant that had provided a tip about the stolen Lexus told police that a man named "Marquise" or "Marquez Johnson" was the person who hit Officer Lewin-Tankel. Officers determined that appellant—who had a warrant out for his arrest and who sometimes was called "Marquez" or "Marquise"—was the suspect.

Police located the Lexus SUV parked in the Panhandle area. It was damaged, with dark hairs found in the front fender, and appellant's fingerprints were found on the door. Numerous stolen license plates were found in the car. The owner reported that it had been stolen about a month earlier.

Appellant was arrested in the Tenderloin area the next day carrying a Lexus key attached to a lanyard in his pocket. He was identified in an in-person show up as the person who got out of the stolen Lexus SUV when it was parked in the Panhandle area. The skateboarder and his companion identified a photograph of appellant as the man who had given the skateboarder the orange vest.

Officer Lewin-Tankel suffered a serious brain injury as a result of the collision and almost died. He remains impaired to this day and is not expected to make anything close to a full recovery.

Appellant had evaded officers twice before. In 2015, he fled from a California Highway Patrol officer in a stolen BMW and led him on a chase through the San Francisco International Airport and parts of Brisbane and Millbrae. He drove at times in excess of 100 miles per hour, causing a

pursuing officer to crash.  In 2007, appellant fled from Antioch police officers in a stolen car before crashing into a guardrail.

An accident reconstructionist called by the defense testified that appellant was traveling at about 12.5 miles per hour when he collided with Officer Lewin-Tankel and that there had been no time for either of them to take evasive action to avoid the collision.  The Budget truck parked on the street would have obstructed appellant's view.  During opening statement, the prosecutor conceded appellant and Officer Lewin-Tankel did not see each other before they collided.

Although not developed at trial, appellant's theory of the case before trial was that he had fled from the police because he had been arrested by the SFPD in 2014 and had filed a federal lawsuit regarding his treatment at the hands of SFPD officers.  He claimed that he evaded police because he feared retaliation for this lawsuit.  The court took judicial notice that a lawsuit against the SFPD and certain officers had been filed by appellant, and that fact was mentioned by defense counsel during closing argument.  But appellant did not testify, and the focus in defense counsel's closing argument was on trying to show that the collision was unintentional and that appellant's conduct did not amount to assault with a deadly weapon.

## II.  DISCUSSION

### A.  *Challenges to Assault with a Deadly Weapon*

Appellant raises several challenges to his conviction for assault with a deadly weapon, arguing that the evidence was insufficient to support that count and the instructions were misleading and incomplete.  We disagree.

#### 1. <u>*Instructions Given and Communications with Jury*</u>

The trial court instructed the jury on assault with a deadly weapon under CALCRIM No. 875, which provided in relevant part:  "To prove that

6

the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant did an act with a deadly weapon other than a firearm that by its nature would directly and probably result in the application of force to a person; [¶] 2. The defendant did that act willfully; [¶] 3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; [¶] AND [¶] 4. When the defendant acted, he had the present ability to apply force with a deadly weapon other than a firearm to a person. [¶] Someone commits an act *willfully* when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage." The jury was also instructed, pursuant to CALCRIM No. 252, that assault with a deadly weapon required general criminal intent: "[T]hat person must not only commit the prohibited act or fail to do the required act, but must do so with wrongful intent. A person acts with wrongful intent when he or she intentionally does a prohibited act or fails to do a required at; however, it is not required that he or she intend to break the law. The act required is explained in the instruction for that crime. . . ."

The trial court refused to give an instruction on the defense of accident, noting (mistakenly) that it did not apply to general intent crimes. The jurors submitted a note during deliberations in which they asked, "Regarding Count # 5 [assault], items 1 through 4, is 'act' •driving? •when car becomes a deadly weapon? •actions that lead to blind turn? •actions from leaving Shell station to collision?" In a separate note, they asked whether an assault could be accidental. The court responded to both notes in writing after conferring with counsel, and advised the jury, "An assault cannot be accidental. The defendant must act willfully as stated in the instruction 875. The act alleged

7

by the People is reckless driving." Defense counsel indicated, "I've got some concerns [with the response] but I can live with it."

2. *Sufficiency of Evidence to Prove Assault*

Taking appellant's arguments in slightly different order than he presents them in his opening brief, we first address his claim that insufficient evidence was introduced by the prosecution to prove assault with a deadly weapon under section 245, subdivision (a)(1). Appellant argues that because he did not know Officer Lewin-Tankel was present when he collided with him, he lacked the general criminal intent required to prove assault. We disagree.

"In deciding claims of insufficient evidence, we review the entire record in the light most favorable to the prosecution 'to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We do not resolve credibility issues or evidentiary conflicts. Instead, we presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' " (*People v. Aznavoleh* (2012) 210 Cal.App.4th 1181, 1186 (*Aznavoleh*).)

Assault is a general intent crime that "requires actual knowledge of the facts sufficient to establish that the defendant's act by its nature will probably and directly result in injury to another." (*People v, Williams* (2001) 26 Cal.4th 779, 782 (*Williams*); see also *People v. Aledamat* (2019) 8 Cal.5th 1, 15.) A specific intent to injure is not required. (*Williams* at pp. 786, 788.) Rather, the defendant must "be aware of the facts that would lead a

8

reasonable person to realize that a battery would directly, naturally and probably result from his [or her] conduct" regardless of whether the defendant is subjectively aware that a battery might result. (*Id.* at p. 788.)

It is well-established that a car may be a deadly weapon under section 245, subdivision (a)(1). (*People v. Bipialaka* (2019) 34 Cal.App.5th 455, 458.) And in *Aznavoleh, supra,* 210 Cal.App.4th at p. 1183, the court recognized that a driver who deliberately raced through a red light at a busy intersection and collided with another vehicle, causing injury to its occupant, could be convicted of assault with a deadly weapon even if he did not intend that consequence. The conduct in this case is comparable to that of the defendant in *Aznavoleh*.

It does not matter that appellant might not have been specifically aware of Officer Lewin-Tankel's presence before they collided. A driver who flees in a stolen vehicle from the police for several minutes, speeding and driving against traffic before turning into a parking garage and rapidly exiting on the other side without yielding to a stop sign, would "probably and directly result in the application of physical force" upon someone—a pedestrian, a cyclist or the occupant of another vehicle. (*People v. Wright* (2002) 100 Cal.App.4th 703, 725 [criticizing Supreme Court's decision in *Williams* but recognizing Court of Appeal was bound by the standard articulated in that case and holding that the evidence defendant recklessly drove his car close to the victims was sufficient to prove assault].) The evidence was sufficient to support appellant's conviction of assault.

3. *Failure to Instruct on Accident under § 26 as Defense to Assault*

Appellant contends it was error to refuse the request for an instruction on the defense of accident under section 26 because a reasonable juror could have determined that the defense barred an assault conviction. We disagree.

9

Section 26 provides: "All persons are capable of committing crimes except those belonging to the following classes: [¶] . . . [¶] Five—Persons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence." The defense appears in CALCRIM No. 3404, which explains a defendant is not guilty of a charged crime if he or she acted "without the intent required for that crime, but acted instead accidentally." (See also *People v. Anderson* (2011) 51 Cal.4th 989, 996 (*Anderson*).)

Essentially, appellant believes he was entitled to an instruction on the accident defense because the jury could have found (and likely did find) that the collision itself was "accidental," in the sense that appellant did not mean to hit or injure Officer Lewin-Tankel. But even if the collision between appellant's vehicle and Officer Lewin-Tankel was an "accident" in the colloquial sense, in that appellant struck him with a motor vehicle without meaning to, this has no real bearing on whether defendant was entitled to a jury instruction on accident as a defense to the crime of assault.

Assault is a general intent crime that "does not require a specific intent to injure the victim." (*Williams*, *supra*, 26 Cal.4th at p. 788.) Thus, to be guilty of assault, defendant need not have intended to collide his vehicle with Officer Lewin-Tankel—all that was necessary was that he willfully did an act that, by its nature, would directly and probably result in the application of force to him. (*Id*. at p. 790.) Here, the assaultive act was fleeing from the police in a reckless manner that would directly and probably result in a collision—which included driving his vehicle at a reckless speed out of the parking lot without yielding to the stop sign. Appellant cites no evidence that he drove his vehicle in this manner by accident (such as evidence that he stepped on the accelerator when he meant to step on the brake), so there was

10

no evidentiary basis for an instruction on the accident defense in this case, and the trial court had no duty to give such an instruction.

Moreover, the accident defense is a claim that the defendant acted without forming the mental state necessary to make his actions a crime. (*People v. Lara* (1996) 44 Cal.App.4th 102, 110 (*Lara*).) "A trial court's responsibility to instruct on accident . . . generally extends no further than the obligation to provide, upon request, a pinpoint instruction relating the evidence to the mental element required for the charged crime." (*Anderson*, *supra*, 51 Cal.4th 989, 997, italics omitted.) The court did instruct that an assault could not be committed accidentally, effectively advising the jury that accident was a defense to assault.

Appellant suggests the court "compounded the prejudicial error by telling the jury that an assault cannot be an accident" because an act that would otherwise be an assault *can* be an accident if committed without the required general intent, and the court's instruction in response to the jury's question suggested otherwise. It is unlikely the jury would have construed the court's answer—which appellant concedes was "technically correct"—in such a fashion. There is no reasonable likelihood the jury interpreted the court's response as appellant suggests. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 905; *People v. Richardson* (2008) 43 Cal.4th 959, 1028.) Rather, the jury would have understood from the instructions taken as a whole that an assault requires general criminal intent and cannot be accidental.

The trial court apparently did hold the mistaken belief that the defense of accident did not apply to general intent crimes. This is not correct, as accident may negate general criminal intent as well as specific criminal intent. (*Lara*, *supra*, 44 Cal.App.4th at p. 110.) But the court's observation was immaterial because it is a settled principle of law that a correct ruling

11

will be upheld even when it is based on erroneous reasoning. (*Green v. Superior Court* (1985) 40 Cal.3d 126, 138.) Additionally, the misapprehension did not prejudice appellant where the trial court advised the jury in response to their note that assault could not be accidental.

4. *The Jury Did Not Convict Appellant of Assault Based on Mere Recklessness*

Appellant argues that that court's instruction in response to the jury note improperly allowed him to be convicted of assault based only on recklessness because it stated that the People were alleging the act on which the assault was based to be "reckless driving." Appellant also claims the prosecutor erred in suggesting during closing argument that the assault was based on the "reckless act" of "fleeing police" and that appellant did "this act of evading police recklessly." We are not persuaded.

It is often said that an assault cannot be based on mere recklessness, a principle that was reaffirmed by our Supreme Court in *Williams*, *supra*, 26 Cal.4th at page 788. However, "[i]n clarifying its earlier statement that reckless conduct cannot constitute an assault, the court in *Williams* explained that 'recklessness' is used in this context 'in its historical sense as a synonym for criminal negligence, rather than its more modern conception as a subjective appreciation of the risk of harm to another. [Citation.]' " (*Williams*, *supra*, 26 Cal.4th at p. 788, fn. 4.)" (*Aznavoleh*, *supra*, 210 Cal.App.4th at p. 1189.)

Appellant was convicted of reckless driving causing injury under Vehicle Code section 23103, subdivision (a). This required more than "mere recklessness" in the historical sense. Vehicle Code section 23013, subdivision (a) provides, "A person who drives a vehicle upon a highway in willful or wanton disregard for the safety of persons or property is guilty of reckless

12

driving." "To establish the offense of reckless driving (Veh. Code, § 23103), it must be shown that the defendant in the management of his automobile at the time and place in question intentionally did something with knowledge that injury to another was probable or acted with a wanton and reckless disregard for the safety of others and in reckless disregard of the consequences of his acts." (*People v. Schumacher* (1961) 194 Cal.App.2d 335, 338.) The jury was instructed with CALCRIM No. 2200, which provided that a conviction of reckless driving under Vehicle Code section 23103 requires the defendant "intentionally drove with wanton disregard for the safety of persons or property" and defined a "wanton disregard for safety" as "(1) he or she is aware that his or her actions present a substantial and unjustifiable risk of harm, and (2) he or she intentionally ignores that risk. The person does not, however, have to intend to cause damage." Although the statute is referred to as "reckless driving," more than mere recklessness is required.

We note that in *Aznavoleh*, cited by appellant, the court determined that the defendant in that case was properly convicted of assault where he was also convicted (like appellant in this case) of reckless driving causing injury "based on evidence that he drove his vehicle with an intentional or conscious disregard for the safety of others." (*Aznavoleh*, *supra*, 210 Cal.App.4th at p. 1188–1189.) "As the Supreme Court has explained, the difference between assault and mere recklessness is that the former 'requires actual knowledge of the facts sufficient to establish that the defendant's act by its nature will probably and directly result in injury to another.' [Citation.] In other words, a defendant 'may not be convicted [of assault] based on facts he did not know but should have known. He, however, need not be subjectively aware of the risk that a battery might occur." [Citation, fn. omitted.] Although one court has criticized this holding as 'adopt[ing] a

13

negligence standard' of criminal liability for assault, it also recognized that the lower courts are bound to follow that holding. [Citations.] The same court further recognized the holding essentially means that 'any operation of a vehicle by a person knowing facts that would lead a reasonable person to realize a battery will probably and directly result may be charged as an assault with a deadly weapon.' " (*Id.* at p. 1189.)

Appellant's conviction for reckless driving was accordingly based on more than mere recklessness. Additionally, the jury was instructed that in order to find appellant guilty of assault, it must find he acted "willfully" and "was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone. [CALCRIM No. 875.]" The jury was not misled to believe mere recklessness could suffice for assault.

B. *Count 4—Resisting Causing Serious Bodily Injury*

Appellant argues that insufficient evidence was presented to support the charge of resisting an officer causing serious bodily injury under section 148.10 as charged in count 4. In what actually seems to be a challenge to the notice provided by the information, he contends that the language of count 4 did not match the proof presented at trial. We reject the claim.

Section 148.10, subdivision (a) penalizes, "Every person who willfully resists a peace officer in the discharge or attempt to discharge any duty of his or her office or employment and whose willful resistance proximately causes death or serious bodily injury to a peace officer. . . ." Appellant was convicted of one count of violating section 148.10 on the theory that he resisted Sgt. Lewis by fleeing from her but injured Officer Lewin-Tankel by colliding with him in the stolen car.

14

Nothing in the statute requires the officer who is injured to be the same officer the defendant resisted; all that is necessary is that death or serious bodily injury be inflicted upon "a" peace officer as a proximate cause of the resisting. Appellant argues it was nonetheless improper to try and convict him on the theory that he caused serious bodily injury to a different peace officer than the one he resisted, because the information alleged he "did willfully and unlawfully resist a peace officer, to wit: SFPD OFFICER CANDEICE LEWIS, # 1365, who was in the discharge or attempted discharge of his/her duties of office and employment, and such willful resistance proximately caused serious bodily injury to *said* officer." (Italics added.) Appellant contends the information thus alleged an injury to Sgt. Lewis, and because it is undisputed that Sgt. Lewis suffered no injury, he was convicted of a crime not actually charged.

The issue was raised below. During a conference on jury instructions after the close of evidence, defense counsel identified this pleading defect and asked the court to determine whether it was a "scrivener's error." The prosecutor indicated that the error was the result of the computer program her office used to create the pleading. The court indicated the issue was notice and said it presumed defense counsel was not arguing he was unaware of the theory behind the charge, noting that "since the moment [counsel] walked into the courtroom," the injury alleged was "to Officer Lewin-Tankel, not to [the pursuing officers]." Defense counsel responded, "I understand the Court's point, and it is a good one. I have been most focused on the injury to Elia Lewin-Tankel because that's the serious issue here, which is also captured in several of the other charges."

The court ruled, "And then with regard to the defect in the pleading, I am going to determine it was a scrivener's error insofar as at the end it says

15

injury to said peace officer which should have been conformed to what is truly alleged here which is injury to Officer Lewin-Tankel. [¶] One, counsel was very aware that's what we were talking about here, and we've been talking about since we entered this courtroom weeks ago for trial was that these were referring to those officers pursuing and the injured officer being Officer Lewin-Tankel in that he's the only injured officer in that event. So I don't feel that it has put you at any disadvantage with regard to the pleading." The court granted the prosecutor's motion to amend the information to allege "*a* peace officer" rather than "*said* peace officer."

Although couched as a challenge to the sufficiency of the evidence, appellant does not really argue that one cannot violate section 148.10 by resisting one officer and injuring another. The issue, rather, is the variance between the language of the original information, which effectively alleged that Sgt. Lewis was the officer injured, and the evidence presented at trial that Officer Lewin-Tankel was the only officer to suffer injury.

Due process requires that a defendant be given fair notice of the crimes charged. (*In re Vaquera* (2019) 39 Cal.App.5th 233, 238–239; U.S. Const., 14th Amend., Cal. Const., art. I, § 15.) "[T]he purpose of the due process notice requirement is to afford an accused ' " 'a reasonable opportunity to prepare and present his defense and not to be taken by surprise by evidence offered at his trial.' " ' " (*People v. Neal* (1984) 159 Cal.App.3d 69, 72.) Defense counsel offered no argument that the pleading misled him to his prejudice, and indeed, he seemed to agree with the trial court's ruling. There was no lack of notice of the charge as it was presented in the amended information where the only officer injured was Officer Lewin-Tankel. (See *People v. Valenti* (2016) 243 Cal.App.4th 1140, 1151, fn. 3 [reference to multiple-victim allegation of the One Strike law as section 667.61,

16

subdivision (e)(5) rather than (e)(4) was "scrivener's error" that was forfeited as defendant acknowledged he had notice of the charge]; § 1009 [court may allow amendment to information at any stage of proceeding to correct deficiency].)

To the extent appellant is challenging the sufficiency of the evidence to support count 4, we reject the claim. Ample evidence was presented to show that appellant resisted Sgt. Lewis by failing to yield and that this resistance caused serious bodily injury to Officer Lewin-Tankel. (*People v. Superior Court (Ferguson)* (2005) 132 Cal.App.4th 1525, 1535 [flight from officers constitutes willful resistance].)

Appellant relies on the decision in *Goldyn v. Hayes* (9th Cir. 2006) 444 F.3d 1062 (*Goldyn*), in which the federal court reversed a state conviction for five counts of passing checks with insufficient funds. The defendant was sentenced to five life terms (12 years of which she actually served before being released on lifetime parole) due to her habitual criminal status. (*Id*. at p. 1063.) The court concluded that because the defendant had a check guarantee card at the time she passed the checks that required the bank to cover them, the state was unable to prove an essential element of the offense—that she lacked credit to cover the check. (*Id*. at pp. 1064–1070.) The fact defendant might be convicted of fraud against the bank did not matter when she was not charged with that offense. She could not "be sent to prison for a crime she didn't commit because she may be guilty of a different crime altogether. 'Perhaps some would say that [Goldyn's] innocence is a mere technicality, but that would miss the point. In a society devoted to the rule of law, the difference between violating or not violating a criminal statute cannot be shrugged aside as a minor detail.' " (*Id*. at p. 1070.)

This is not a case where appellant was sent to prison because he committed a different crime that he was charged with committing. Rather, the court allowed the prosecution to amend one word in the information before the case went to the jury so that it conformed to proof—and to the parties' uncontroverted understanding of what appellant was accused of doing. While the federal appellate court in *Goldyn* was understandably "saddened and dismayed" that the defendant had spent 12 years of her life in custody for conduct that was not a crime under state law, appellant is not serving any time in custody for a crime he was not accused of committing or conduct that is not a crime under California law. *Goldwyn* is inapposite.

C. *Section 654*

Appellant contends his consecutive one-year sentence for his conviction of leaving the scene of an accident under Vehicle Code section 20001, subdivision (a) in count 9 (one-third the middle term pursuant to section 1170.1) should have been stayed under section 654 because it involved the same conduct as the assault conviction in count 5, for which he was also sentenced. We disagree.

Section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "The purpose of this legislative protection against punishment for more than one violation arising out of an 'act or omission' is to insure that a defendant's punishment will be commensurate with his culpability." (*People v. Perez* (1979) 23 Cal.3d 545, 550–551.)

"[S]ection 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated

more than one statute but nevertheless constituted an indivisible transaction." (*Perez*, *supra*, 23 Cal.3d at p. 551.) Whether a course of conduct is divisible and thus gives rise to more than one act under section 654 depends on the defendant's intent and objective. (*Neal v. State of California* (1960) 55 Cal.2d 11, 19, disapproved on other grounds in *People v. Correa* (2012) 54 Cal.4th 331, 334, 344.) If all of a defendant's offenses were incident to one objective, he or she may be punished for the offense carrying the greater sentence (§ 654, subd. (a)), but not for both crimes. (*Neal* at p. 19.)

"But even if a course of conduct is 'directed to one objective,' it may 'give rise to multiple violations and punishment' if it is 'divisible in time.' [Citations.] Where the defendant's acts are 'temporally separated' they 'afford the defendant [an] opportunity to reflect and to renew his or her intent before committing the next [offense], thereby aggravating the violation of public security or policy already undertaken.' " (*People v. Deegan* (2016) 247 Cal.App.4th 532, 542.) Whether section 654 applies is generally a question of fact, and a trial court's finding (even if implied) that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if supported by substantial evidence. (*People v. Osband* (1996) 13 Cal.4th 622, 730–731.)

In this case, the assault conviction in count 5 was based on appellant's reckless driving in attempting to flee the police, a course of conduct that culminated in his collision with Officer Lewin-Tankel.[4] After this collision, Vehicle Code section 20001, subdivision (a) required him to stay at the scene and provide certain information. "[A]lthough the Vehicle Code section 20001(a) offense is commonly referred to as a hit and run, the term is

---

[4] The sentence for appellant's reckless driving conviction under count 8 was stayed under section 654.

19

something of a misnomer; the offense is 'more accurately described as fleeing the scene of an injury accident.' " (*People v. Martinez* (2017) 2 Cal.5th 1093, 1102.) "That is to say, ' "the act made criminal" ' under the statute ' "is not the 'hitting' but the 'running.' " ' " (*Ibid.*) " ' "The legislative purpose of sections 20001 and 20003 is to prevent the driver of a vehicle involved in an injury-causing accident from leaving injured persons in distress and danger for want of medical care and from attempting to avoid possible civil or criminal liability for the accident by failing to identify oneself." ' " (*Ibid.*; see also *People v. Nuno* (2018) 26 Cal.App.5th 43, 47.)

Appellant's conviction under count 9 was therefore based on his leaving the scene of the accident, not on the collision with Officer Lewin-Tankel per se. Although all his actions might have been motivated by a desire to evade the police, the act of fleeing from the scene of the collision with Officer Lewin-Tankel was divisible in time from the assault count, which was based on appellant's conduct leading up to that collision. Substantial evidence supports the conclusion that by the time appellant violated Vehicle Code section 20001 by leaving the scene of the accident, he had time to reflect before renewing his intent to evade.[5]

Appellant argues that because a notation of "654" appeared next to the summary of count 9 on the court's copy of the probation report, this shows

---

[5] We note that in the defense sentencing memorandum, defense counsel argued (successfully) for the application of section 654 to counts 1 (evading), 4 (resisting) and 8 (reckless driving). He did not argue section 654 applied to count 9, but urged the court to impose a concurrent sentence. Although this did not forfeit appellant's section 654 challenge, which may be brought at any time (*People v. Hester* (2000) 22 Cal.4th 290, 295; *People v. Soto* (2016) 245 Cal.App.4th 1219, 1234), it does lend support for the conclusion that all parties recognized count 9 was divisible from the assault.

20

that the court really believed section 654 applied and it mistakenly imposed sentence for that count. Assuming the notation was made by the court, this did not in any way bind it to any particular disposition on the issue. The court may simply have been making notes to itself regarding questions it had going into the sentencing hearing—questions that were answered by the time it pronounced sentence.

D. *Senate Bill 136*

Appellant's sentence was enhanced by two years—one year apiece—for the two prison priors found true by the court under section 667.5, subdivision (b). At the time of appellant's sentencing, section 667.5, subdivision (b) provided for a one-year sentence enhancement if the defendant previously served a prison term for an offense that is not a violent felony under section 667.5, subdivision (c).

Amended by Senate Bill 136, which was effective January 1, 2020, section 667.5, subdivision (b) now applies only if the prior prison term was served for a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b). (§ 667.5, subd. (b), as amended by Stats. 2019, ch. 590, § 1; Gov. Code, § 9600, subd. (a).) Appellant did not serve his prior prison term for a sexually violent offense, so he would not incur a sentence enhancement if he were sentenced today under current section 667.5, subdivision (b).

Because appellant's case is not yet final, he contends the statutory amendment applies retroactively and the enhancements imposed for the prior prison terms should be stricken. The People concede the statutory change applies retroactively. We agree. (*People v. Gastelum* (2020) 45 Cal.App.5th 757, 772; *People v. Petri* (2020) 45 Cal.App.5th 82, 93; see *In re Estrada* (1965) 63 Cal.2d 740, 746.)

21

Remand is not necessary when the court has already imposed the maximum sentence available. (*People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15; *People v. Lopez* (2019) 42 Cal.App.5th 337, 342.) Here, the court imposed the upper term on the principal count and ran the sentences on the rest of the counts consecutively, except for those three counts which it was required to stay under section 654. The Attorney General agrees that the court imposed the maximum legal sentence and that a remand is unnecessary. We will strike the two prison priors, which will result in an aggregate sentence of ten years eight months rather than twelve years eight months.

E. *Review of In Camera Proceedings*

1. Pitchess *Motion*

Prior to trial, appellant moved for the inspection of the personnel records of twelve SFPD officers pursuant to Evidence Code section 1043 and *Pitchess*, *supra*, 11 Cal.3d 531. A written stipulation was reached, under which records of citizen complaints involving dishonesty and fabrication, unlawful arrest and racial profiling would be provided as to five officers (Officers Ryan, McEachern, Guiney, and Sergeants Sullivan and Moody) and complaints of excessive force would also be provided as to two of these officers (Officer Guiney and Sergeant Sullivan). The stipulation provided that the records would be reviewed by the court in camera and complaints would be disclosed to the defense subject to a protective order. An in camera hearing was held and some information was disclosed to the defense subject to a protective order. Appellant then renewed his *Pitchess* motion some months later, seeking review of a Department of Police Accountability file that concerned at least one of the officers named in the original request. Documents were again disclosed to the defense subject to a protective order.

Appellant asks that we conduct an independent review of the in camera proceedings. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229–1232 (*Mooc*).) The People do not object. Customarily, police personnel records reviewed by the trial court are made part of the confidential record, and appellate courts independently review the records. (See *People v. Hughes* (2002) 27 Cal.4th 287, 330.) Here, we have reviewed all of the documents relevant to the *Pitchess* request: the *Pitchess* requests themselves, the stipulation regarding review, the protective orders, a confidential log of the record review, and the citizen's complaints themselves which are contained on two CDs produced by the custodian of records in response to the *Pitchess* request. Having reviewed these records, some of which are sealed, we conclude the trial court did not abuse its discretion.

2. Confidential Informant

Finally, in a written motion in limine presented to the court, appellant requested disclosure of the identity of the confidential informant who gave police the initial tip that a stolen Lexus SUV was being driven around the Tenderloin and later told police that "Marquise" or "Marquez Johnson" was the person who collided with Officer Lewin-Tankel. The court held two hearings on the issue and denied disclosure of the informant's identity and of videotapes that would have revealed his identity.

Appellant asks that we independently review the in camera hearings held to determine whether the informant's identity should have been disclosed to the defense. The People do not object. We have reviewed the sealed records and have found no abuse of discretion. (*People v. Lawley* (2002) 27 Cal.4th 102, 160.)

"When weighing the necessity to keep an informant's identity confidential against the necessity for disclosure in the interest of justice, a

trial court must order the prosecution to disclose the informant's identity and his location, or suffer dismissal of the case, if the informant is shown to be a material witness. [Citation.] 'An informant is a material witness if there appears, from the evidence presented, a reasonable possibility that he or she could give evidence on the issue of guilt that might exonerate the defendant. [Citations.] A trial court does not abuse its discretion denying the motion to disclose where 'the record demonstrates, based on a sufficiently searching inquiry, that the informant could not have provided any evidence that, to a reasonable possibility, might have exonerated defendant." (*People v. Bradley* (2017) 7 Cal.App.5th 607, 620.)

Here, the informant was not a material witness. The prosecution did not rely upon him to prove either the stolen status of the Lexus SUV or appellant's conduct during the flight from police that culminated in the charges. There is no suggestion he could have provided exculpatory evidence as to either; the tips merely explained how appellant came under police scrutiny. They were of minimal relevance to this case, where the stolen status of the SUV was proved by the testimony of its owner, where other witnesses identified appellant as the driver and where the jury was instructed to consider the second tip leading to appellant's arrest only to explain the officers' conduct, and not for its truth.

## III.   DISPOSITION

The two prior prison term enhancements under section 667.5, subdivision (b) are stricken. The abstract of judgment shall be modified accordingly and shall reflect an aggregate prison term of 10 years eight months. The judgment is otherwise affirmed.

_____

NEEDHAM, J.


We concur.



_____

JONES, P.J.



_____

SIMONS, J.




*People v. Flanigan* / A158510

25